[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 252 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 253 
Plaintiffs, commonly known and herein designated as UAW-CIO, and others, sought and obtained a decree enjoining the prosecuting attorney of Wayne county and the attorney general, who intervened as a defendant, from prosecuting criminal proceedings under PA 1947, No 318,* which criminal prosecutions were threatened under circumstances hereinafter noted. From the decree entered in the circuit court the defendants have appealed.
A dispute involving wages arose between UAW-CIO union employees and their employer, the Chrysler Corporation. Resort was had to collective bargaining. The notices required by State and Federal law regulating labor disputes were given and mediation sessions between the respective parties followed. While such sessions were pending the union officers concluded that further mediation would be of no avail and thereupon gave notice to the representatives of the Chrysler Corporation that a strike would be called, and such strike did go into effect on the forenoon of the following day. The calling and putting into effect of this strike was obviously in violation of the terms of the statute about to be noted and rendered plaintiffs subject to threatened criminal prosecution, providing the statute is valid.
PA 1947, No 318, commonly known as the Bonine-Tripp act, provides that in the event the parties to a controversy such as here involved are not able to agree among themselves or that a solution and determination of their controversy cannot be reached by mediation or arbitration, before a strike may be *Page 255 
called an election shall be held in accordance with the terms of the statute and the strike shall not be instituted unless "a majority of all employees in such bargaining unit * * * vote in favor of such action." PA 1947, No 318, § 9a (CL 1948, § 423.9a). Section 22 of the act (CL 1948, § 423.22) in part reads:
"Any person who either individually or as 1 of a group of persons instigates a strike, or who shall call or cause a strike to be placed in effect, * * * while mediation is pending, * * * or while an election is pending, * * * shall upon conviction thereof be punished by a fine of not more than $1,000 or by imprisonment in the county jail for not more than 6 months, or by both such fine and imprisonment."
It is plaintiffs' contention that insofar as the statute makes the calling of an election and the affirmative vote of a majority of all employees in the bargaining unit involved in the labor controversy a prerequisite to calling or instituting a strike and provides a penalty for violation of the statute, it impairs the rights of plaintiffs in violation of article 2, §§ 4, 16, of the Michigan Constitution, and the due process clause of the Fourteenth Amendment of the Federal Constitution, and further that the noted statutory provision is repugnant to the right of collective bargaining granted to unions under the national labor management relations act, i.e. — the Taft-Hartley act. (61 Stat 136; 29 USCA 1948 Cum Supp §§ 141-197.) On this appeal defendants have presented 2 questions, as follows:
"1. Do the election requirements of PA 1947, No 318, §§ 9, 9a, 9b and 9e, known as the Bonine-Tripp act, and the penal provisions thereof, § 22,** violate plaintiffs' and appellees' rights of freedom of speech *Page 256 
and due process of law as guaranteed by article 2, §§ 4 and 16 of the Constitution of Michigan, 1908, and Amendments 1 and 14, U.S. Constitution?"
"2. Has Congress, in the national labor relations management act (Taft-Hartley act), by its expressed intent therein, so preempted the field of regulation of labor-management relations in industries affecting commerce that any State police power regulation of such relations in industries affecting commerce must necessarily be in conflict with such Federal law and therefore null and void?"***
In granting plaintiffs the injunctive relief prayed, the circuit judge placed decision on 3 grounds: That the statutory requirement of an election was (1) in violation of article 2, §§ 4 and 16 of the Michigan Constitution; (2) in violation of the Fourteenth Amendment of the Federal Constitution; and (3) as affecting interstate commerce in violation of article 1, § 8 (3) of the Federal Constitution — in view of the national labor management relations (Taft-Hartley) act.
The recent decision of the United States supreme court inInternational Union, U.A.W., A.F. of L., Local 232, v.Wisconsin Employment Relations Board, 336 U.S. 245 (69 S Ct 516,93 L ed 651), is informative in the field of law pertinent to the instant case. For brevity we refer to the cited case as theWisconsin Case. That suit involved the constitutionality of the Wisconsin employment peace act, the pertinent portion of which we quote in the accompanying footnote.[8224] At the outset of the United *Page 257 
States supreme court's opinion it is stated that the validity of the Wisconsin statute "is challenged because it is said to transgress constitutional limitations imposed by the Thirteenth and Fourteenth Amendments and by the commerce clause as implemented by the national labor relations act (49 Stat 449) and the labor management relations act of 1947." (61 Stat 136; 29 USCA 1948 Cum Supp §§ 141-197.) Negotiations incident to a new collective bargaining contract between the employer, the Briggs 
Stratton Corporation, and its employees reached a deadlock. Thereupon the union resorted to repeatedly calling union meetings during working hours and without warning the employees would leave their work and return at their pleasure. This occurred 26 times within approximately four and one-half months. This procedure had the desired effect of disrupting the employer's business, and as described by the union leaders was "a new technique for bringing pressure upon the employer" to obtain concessions incident to the union's demands made in the collective bargaining proceedings.
The employer instituted proceedings before the Wisconsin employment relations board. After prescribed procedure that board ordered the union to cease and desist from "engaging in any concerted efforts to interfere with production by arbitrarily calling union meetings and inducing work stoppages *Page 258 
during regularly scheduled working hours; or engaging in any other concerted effort to interfere with production of the complainant except by leaving the premises in an orderly manner for the purpose of going on strike."
The union sought and obtained in the Wisconsin courts review of the board's order. In the particular above noted the Wisconsin supreme court affirmed the board's order (International Union,U.A.W., A.F. of L., Local 232, v. Wisconsin EmploymentRelations Board, 250 Wis. 550 [27 N.W.2d 875, 28 N.W.2d 254]); and in that respect the United States supreme court affirmed the holding of the Wisconsin supreme court. While the issue in the WisconsinCase was not identical with that in the instant case, the reasoning and holding in that case are applicable to the case at bar.
Plaintiffs' first argument in support of their contention that the statute here involved is unconstitutional is stated in their brief as follows: "To prohibit by law calling or instigating a strike without distinction as to object or other circumstances is so unreasonable as to deny freedom of speech and due process of law."
As a sufficient refutation of this contention it need only be noted that the Bonine-Tripp act does not prohibit calling or instituting a strike incident to any legitimate labor controversy. Instead the act merely requires as a condition precedent to calling or instituting a strike the approval so to do expressed at an election by the vote of a majority of the employees in the bargaining unit. Quite universally there are 3 parties interested in and affected by a strike — the employer, the employees, and the public. Plaintiffs' statement in their brief concerning picketing is equally applicable to a strike:
"Nobody is really confused into thinking that picketing is not something more than speech or that *Page 259 
the right to picket as supported by freedom of speech is not without limits."
In the Wisconsin Case, supra, the ultimate decision was that the State might provide against undue coercion. A strike is not only a means of exercising the right of free speech, but it is likewise a medium of exercising coercion. As such it is subject to reasonable regulation by the State in the exercise of its police power. It may well be inferred that the legislature in enacting the statutory provision under consideration was at least to some extent motivated by a desire to prevent stoppage of work in a plant as to all of the employees, which stoppage was caused by a small number of employees in a key position going on strike. The detriment in such cases to the remaining majority of the employees, to the employer, and also generally to the public, is obvious; and the legislature might well have considered it a justifiable reason for restricting or limiting the union's right to institute a strike incident to collective bargaining proceedings as prescribed in the Bonine-Tripp act.
"Being a legislative judgment it is presumed to be supported by facts known to the legislature unless facts judicially known or proved preclude that possibility." South Carolina State HighwayDepartment v. Barnwell Brothers, Inc., 303 U.S. 177, 191
(58 S Ct 510, 82 L ed 734).
"The most that can be said is that whether that determination was an unreasonable, arbitrary or unequal exercise of power is fairly debatable. In such circumstances, the settled rule of this court is that it will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining the question." Zahn v. Board of Public Works ofCity of Los Angeles, 274 U.S. 325 (47 S Ct 594, 71 L ed 1074). *Page 260 
"The right of the State to determine whether the common interest is best served by imposing some restrictions upon the use of weapons for inflicting economic injury in the struggle of conflicting industrial forces has not previously been doubted. * * *
"But the circumstance that a labor dispute is the occasion of exercising freedom of expression does not give that freedom any greater constitutional sanction or render it completely inviolable. * * *
"We must be mindful that "the rights of employers and employees to conduct their economic affairs and to compete with others for a share in the products of industry are subject to modification or qualification in the interests of the society in which they exist.'" Carpenters Joiners Union of America, Local No. 213, v. Ritter's Cafe, 315 U.S. 722 (62 S Ct 807, 86 L ed 1143).
We think it is not an unreasonable exercise of the State's police power to forbid resort to a strike which is not approved by a majority of the employees involved, and thereby protecting both the majority of the employees in the bargaining unit and the public. Nor is it a denial of free speech any more than is the limitation of certain other phases of action in labor controversies. Carpenters Joiners Union of America, Local No.213, v. Ritter's Cafe, supra; Lincoln Federal Labor Union v.Northwestern Iron Metal Co., 335 U.S. 525 (69 S Ct 251,93 L ed 212). In disposing of a like contention in the Wisconsin Case,supra, the court said:
"It is further contended that the statute as applied invades rights of free speech and public assemblage guaranteed by the Fourteenth Amendment. We recently considered a similar contention in connection with other State action concerning labor relations.Lincoln Federal Labor Union v. Northwestern Iron Metal Co., and Whitaker v. North Carolina, 335 U.S. 525 (69 S Ct 251,93 L ed 212), and American Federation of Labor v. American Sash *Page 261 Door Co., 335 U.S. 538 (69 S Ct 258, 93 L ed 222). For reasons there stated, these contentions are without merit."
The Wisconsin statute, which in its requirement of a majority vote of the employees of the bargaining unit is quite identical with the like provision in the Bonine-Tripp act, was held valid as against like contentions as herein presented, and rehearing was later denied, in Hotel Restaurant Employees' InternationalAlliance, Local No. 122, v. Wisconsin Employment RelationsBoard, 236 Wis. 329 (294 N.W. 632, 295 N.W. 634). On appeal to the United States supreme court the decision of the Wisconsin court was affirmed. See Hotel Restaurant Employees' InternationalAlliance, Local No. 122, v. Wisconsin Employment RelationsBoard, 315 U.S. 437 (62 S Ct 706, 86 L ed 946). In its opinion the supreme court of the United States said:
"The specific question for decision is the constitutional validity of an order made by the Wisconsin employment relations board acting under the employment peace act, Wisconsin Laws of 1939, chap 57. * * *
"What public policy Wisconsin should adopt in furthering desirable industrial relations is for it to say, so long as rights guaranteed by the Constitution are respected. Aikens v.Wisconsin, 195 U.S. 194 (25 S Ct 3, 49 L ed 154); Senn v. TileLayers Protective Union, 301 U.S. 468 (57 S Ct 857, 81 L ed 1229). As the order and the appropriate provisions of the statute upon which it was based leave the petitioners' freedom of speech unimpaired, the judgment below must be affirmed."
It is worthy of note that the United States supreme court in its opinion literally quoted the provision of the Wisconsin statute which makes it "`an unfair labor practice'" to "`co-operate in engaging in, promoting or inducing picketing, boycotting or any other overt concomitant of a strike unless a majority *Page 262 
in a collective bargaining unit of the employees of an employer against whom such acts are primarily directed have voted by secret ballot to call a strike.'"
As pertinent to the issue in the instant case we quote the following from the opinion of the Wisconsin supreme court in theHotel Restaurant Employees' Local No. 122 Case, 236 Wis. 329,345 (294 N.W. 632, 295 N.W. 634):
"We find nothing in the act which prevents a minority of a collective-bargaining unit from withdrawing from employment either singly or in concert. (For like provision in the Bonine-Tripp act, see section 13a.) * * *
"The petitioners complain that the characterization of the acts of employees as unfair labor practices cannot be made to depend on the action of a majority of a collective-bargaining unit; that the legislature cannot place it within the power of a majority of the collective-bargaining unit to authorize a strike. This argument is an attack upon a principle which is fundamental in the attempt of the legislature and of congress to regulate labor relations. The principle upon which authorized collective bargaining depends is that the rule of the majority within an appropriate collective-bargaining unit shall bind the minority. We see no way by which the principle of collective bargaining can be maintained unless this right of a majority of a collective-bargaining unit to speak for the unit including the minority is maintained. A bargain on behalf of a collective-bargaining unit amounts to nothing, if after it is made the individuals or some of them comprising that unit are not affected thereby. This principle is explicit in the national labor relations act (29 USCA, § 151 et seq.), in the railway labor peace act (45 USCA, § 151 et seq.), and in the act now under consideration. If the majority of a collective-bargaining unit can thus coerce the minority in the matter of bargaining, we see no reason why the legislature *Page 263 
may not vest in a majority of the unit power to determine whether such conditions obtain in the employment as warrant the calling of a strike in an effort to remedy them. * * *
"In providing for `industrial peace, regular and adequate income for the employee, and uninterrupted production of goods and services,' * * * we see no reason why the legislature may not forbid concerted picketing and boycotting in aid of an unauthorized strike. * * * All these questions relating to rights of employees to organize, conduct strikes, boycotts, and other coercive measures are in the field of public policy. As the court of appeals of New York said in the case already cited (May'sFurs Ready-To-Wear, Inc., v. Bauer [1940], 282 N.Y. 331
[26 N.E.2d 279]), and as this court has said many, many times, these questions are for the legislature. Courts do not sit to pass upon the wisdom or unwisdom of the acts of the legislature. * * *
"Both parties to a labor dispute are under the same constitution and both are subject to the valid acts of the legislature. Just where the line should be drawn in an effort to balance the bargaining power of the parties is primarily a matter of public policy for the legislature and not a question of law for the courts."
While seemingly quite unnecessary, it may be noted that section 19 of the Bonine-Tripp act provides:
"This act shall be deemed an exercise of the police power of the State of Michigan for the protection of the public welfare, safety, prosperity, health and peace of the people; and all the provisions of this act shall be liberally construed for the accomplishment of said purposes."
In the light of the authorities hereinbefore cited we are of the opinion that, contrary to appellees' contention, the provision of the act under consideration is not "so unreasonable as to deny freedom of speech and due process of law." *Page 264 
In so concluding we are mindful that in a case decided by the Federal district court in Kansas an opposite conclusion was reached. See Stapleton v. Mitchell, 60 F. Supp. 51. We also note the decision in Alabama State Federation of Labor v.McAdory, 246 Ala. 1 (18 So.2d 810); and American Federation ofLabor v. Bain, 165 Or. 183 (106 P.2d 544, 130 ALR 1278), cited by appellees and relied upon in the opinion of the trial judge. But the statutory provision considered in the Alabama Case was materially different than the Michigan statute in the following respect. The vote required to authorize a strike was "the vote of the majority of the regular employees working in the business, plant, or in such unit thereof." In construing this provision, the court said:
"The denial of the right to strike is made to rest, not upon the rule of the majority of any bargaining unit or in any craft to which the workmen belong, but upon the whim or caprice of others who may be employed in the business, plant, or unit thereof, whoever they may be and whatever views they may entertain as to labor or labor unions."
In the remaining case, American Federation of Labor v. Bain,supra, the court held invalid the Oregon statute which prohibited picketing by a minority of the employees of a given employer. The court said: "The controversy has resolved itself largely into the question whether the regulation, or, as the plaintiffs would have it, the prohibition, of picketing and boycotting in sections 1 and 3, invades the plaintiffs' fundamental rights and liberties of freedom of speech and of assemblage." Obviously the issue in the Oregon Case was quite materially different than that in the instant case, and, hence, the holding in the Oregon Case is not persuasively material to decision herein. *Page 265 
As earlier noted herein the remaining question as restated in appellees' brief is as follows:
"2. In view of the national labor management relations act and the provisions requiring collective bargaining by representatives in industries affecting commerce, was it within State authority to make a strike unlawful if not approved by a majority of the employees in the collective bargaining unit?"
On this issue the position of appellees is stated in their brief as follows: "The strike election provisions of the Bonine-Tripp act conflict with the national labor management relations act."
Admittedly, as applied to interstate commerce, if the Bonine-Tripp act does conflict with the provisions of the national labor management relations act, the former is not enforceable; but if there is no conflict the validity and enforceability of the Bonine-Tripp act is not impaired on this ground. In appellees' brief it is pointed out that as related to collective bargaining the national labor management relations act contains specific provisions, and it is asserted "it covers the field of the strike in consequence of failure to reach an agreement." And appellees' brief continues:
"It (the Federal act) sets the following conditions precedent to striking: (1) 60 days notice of contract termination; (2) Offer to negotiate new contract; (3) Notice to Federal and State conciliation boards of existence of a dispute; and (4) continues in full force and effect without resorting to strike or lockout all the terms and conditions of the existing contract for a period of 60 days." See national labor management relations act (1947), § 8.
We do not discover in the foregoing any provisions which are inconsistent with or in conflict, either expressly or by necessary inference, with the requirement of the Bonine-Tripp act that as precedent to *Page 266 
calling a strike there shall be a vote of the employees of the bargaining unit; nor has there otherwise been called to our attention any such inconsistent or conflicting provisions in the Bonine-Tripp act. The very fact that subdivision 3 of the above quotation requires notice to "State conciliation boards" indicates that the Federal act was not thought to be exclusive of permissible State regulations. Further, it is difficult, if not quite impossible, to read the decision in the Wisconsin Case
hereinbefore noted without coming to the conclusion that in the exercise of its police power a State may by legislation regulate the exercise of the right of employees to strike, providing such regulations are not in conflict with or inconsistent with Federal regulations.
As stated by Justice Brandeis in Dorchy v. Kansas,272 U.S. 306 (47 S Ct 86, 71 L ed 248): "Neither the common law, nor the Fourteenth Amendment, confers the absolute right to strike." That individual States have the right within the valid exercise of police power to regulate the calling of a strike, and that restrictions of that character do not violate the constitutional liberty possessed by employees or union labor organizations has been adjudicated by highest authority. See Nebbia v. NewYork, 291 U.S. 502 (54 S Ct 505, 78 L ed 940, 89 ALR 1469). InAllen-Bradley Local No. 1111, United Electrical, Radio MachineWorkers of America, v. Wisconsin Employment Relations Board,315 U.S. 740, 749 (62 S Ct 820, 86 L ed 1154), it was said:
"Furthermore, this court has long insisted that an `intention of congress to exclude States from exerting their police power must be clearly manifested.' * * * We will not lightly infer that congress by the mere passage of a Federal act has impaired the traditional sovereignty of the several States in that regard." *Page 267 
That congress in passing the labor management relations act of 1947 did not intend thereby to deprive the States of any and all power to limit or qualify the right to strike, is persuasively indicated by section 13 of the act which reads:
"Nothing in this act, except as specifically provided forherein, shall be construed so as either to interfere with or impede or diminish in any way the right to strike, or to affectthe limitations or qualifications on that right."
And in Kelly v. Washington, ex rel. Foss Co., 302 U.S. 1, 10
(58 S Ct 87, 82 L ed 3, 10), the court said:
"The principle is thoroughly established that the exercise by the State of its police power, which would be valid if not superseded by Federal action, is superseded only where the repugnance or conflict is so `direct and positive' that the two acts cannot `be reconciled or consistently stand together.'"
We conclude that in the particular under consideration the Michigan statute is not in conflict with the national labor management relations (Taft-Hartley) act.
In considering this case we have not overlooked appellees' contention that enforcement of the statutory provision herein involved would be in conflict with the commerce clause of the United States Constitution, art. 1, § 8 (3). The test would be: — Does this statutory provision impose an undue burden upon interstate commerce? We think it does not. This issue was quite fully considered in International Union, U.A.W., A.F. of L.,Local 232, v. Wisconsin Employment Relations Board, supra, and decision therein was adverse to appellees' contention herein. In reaching a like conclusion we are content to rest decision on the holding of the Wisconsin court, incident to which it was said: *Page 268 
"But if the contention of the respondents on the ground now under consideration is upheld, then every order of the board based on violation of unfair labor practices of employees (and we might add every pertinent act of the legislature) may be ignored and there will be nothing left that the board can effectively do, as some products of every manufacturer inevitably reach interstate commerce."
To hold otherwise than in the cited case in practical effect would be to say that in this type of cases the commerce clause of the United States Constitution largely, if not wholly, nullifies the inherent rights of States to exercise police power. We are not prepared to so hold. In this connection it may be noted that appellees call attention to the fact that some employees of the Chrysler Corporation who would be classed in the same bargaining unit are employed by the corporation in Indiana and some in California. Even so, we are of the opinion that this circumstance cannot be held to be a restriction upon the exercise in Michigan of the State's inherent police power incident to a strike which is located in this State. Otherwise diversity of State location of employees would limit the right of any of the States, wherein the employees were located, in the exercise of inherent police power in the particular with which we are here concerned. We know of no authority sustaining such conclusion and consider it not tenable.
"Under our constitutional system, there necessarily remains to the States, until congress acts, a wide range for the permissible exercise of power appropriate to their territorial jurisdiction although interstate commerce may be affected. Minnesota RateCases, 230 U.S. 352, 402 (33 S Ct 729, 57 L ed 1511, 48 LRA NS 1151, Ann Cas 1916A, 18). States are thus enabled to deal with local exigencies and to exert in the absence of conflict with Federal legislation *Page 269 
an essential protective power. * * * Congress may circumscribe its regulation and occupy only a limited field. When it does so, State regulation outside that limited field and otherwise admissible is not forbidden or displaced." Kelly v.Washington, ex rel. Foss Co., supra.
Incident to appellees' challenge of the validity of the statutory provision here involved, we find no merit in their contention that: "It is equally obvious that the statute is not saved by the delegation of authority to a majority of the bargaining unit. The character of the right (to strike) under discussion pertains to each individual." The right of an individual to terminate his employment is expressly preserved to the employee by the portion of section 13a of the Bonine-Tripp act, which reads:
"Nothing in this act shall be construed to require an employee to continue rendering labor or service without his consent or to make illegal the quitting of his employment."
In granting the injunctive relief prayed in the instant case the circuit judge was in error. The decree entered in the circuit court is reversed and a decree dismissing the bill of complaint may be entered in this Court. Since the constitutionality of the statute and an important question are here involved, no costs are awarded.
SHARPE, C.J., and BUSHNELL, BOYLES, REID, DETHMERS, BUTZEL, and CARR, JJ., concurred.
* PA 1939, No 176, as amended; CL 1948, § 423.1 et seq.
(Stat Ann 1947 Cum Supp § 17.454[1] et seq.). We are not herein concerned with the latest amendment to this statute. See PA 1949, No 230.
** CL 1948, §§ 423.9, 423.9a, 423.9b, 423.9e, 423.22. — REPORTER.
*** Question number two is restated by appellees as follows:
"2. In view of the national labor management relations act and the provisions requiring collective bargaining by representatives in industries affecting commerce, was it within State authority to make a strike unlawful if not approved by a majority of the employees in the collective bargaining unit?"
[8224] The Wisconsin employment peace act provides in part as follows:
"(2) It shall be an unfair labor practice for an employee individually or in concert with others: (a) To coerce or intimidate an employee in the enjoyment of his legal rights, including those guaranteed in section 111.04, or to intimidate his family, picket his domicile, or injure the person or property of such employee or his family. * * * (c) To co-operate in engaging in, promoting or inducing picketing (not constituting an exercise of constitutionally-guaranteed free speech), boycotting or any other overt concomitant of a strike unless a majority in a collective bargaining unit of the employees of an employer against whom such acts are primarily directed have voted by secret ballot to call a strike. * * * (h) To take unauthorized possession of property of the employer or to engage in any concerted effort to interfere with production except by leaving the premises in an orderly manner for the purpose of going on strike." Wisconsin Statute 1947, chap 111, § 111.06. *Page 270