**David SEEMAN, Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant.**

**No. 66706.**

Supreme Court of Iowa.

July 21, 1982.

John R. Ward of Hedberg, Brick, Tan, Pratt & Ward, and Thomas P. Hyland, Des Moines, for plaintiff.

Ross H. Sidney and John Werner of Grefe & Sidney, Des Moines, for defendant.

SCHULTZ, Justice.

Pursuant to chapter 684A, The Code, and Iowa R.App.P. 451–461, the United States District Court for the Southern District of Iowa,[1] on its own motion, has certified two questions of law for answer by this court:

1. Does section 507B.4(9)(f), The Code, create a cause of action for damages in the individual entitled to the insurance proceeds when the insurance carrier has violated that section?

2. Does an insurance carrier violate section 507B.4(9)(f) by following the general business practice of inexcusably delaying payment of the settlement sum after a prompt, fair and equitable settlement has been reached?

We answer the first question in the negative, which renders it unnecessary for us to reach the second question.

The statutory provision at issue provides:

The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:

. . . .

9. *Unfair claim settlement practices.* Committing or performing with such frequency as to indicate a general business practice any of the following:

. . . .

f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

§ 507B.4(9)(f), The Code.

The facts relevant to the questions certified are as follows. Plaintiff, David Seeman, brought an action in the Polk District Court for money damages, claiming that defendant, Liberty Mutual Insurance Com-

---

1. The Honorable William C. Stuart, Chief Judge, presiding.

pany, as a part of its general business practice, unreasonably delayed payment of an agreed upon settlement of a workers' compensation claim by plaintiff. Defendant removed the case to the federal district court. At trial sufficient evidence was produced to support the jury's findings that the parties had reached a settlement agreement with respect to plaintiff's workers' compensation claim, that defendant unreasonably delayed making full payment to plaintiff, and that such unreasonable delay constituted a general business practice of defendant. The jury returned verdicts for plaintiff, awarding him both compensatory and punitive damages.

The district court stayed consideration of defendant's motions for judgment notwithstanding the verdict and for a new trial pending this court's resolution of the questions certified.

I. Chapter 507B does not specify whether an individual cause of action is authorized for the violation of section 507B.4(9)(f). The threshold inquiry, therefore, is the appropriate test for determining when a cause of action may and should be judicially implied from a statute that does not expressly provide for private suits.

Plaintiff contends that, under Iowa case law, a breach of a duty created by statute gives rise to a cause of action in tort. As plaintiff notes, on many occasions this court has been asked to determine whether a statute, rule, or ordinance that is silent with respect to the existence of a private remedy provides a duty or standard of care the violation of which results in liability in a tort action based upon negligence. *E.g.,* *Wilson v. Nepstad,* 282 N.W.2d 664, 667–69 (Iowa 1979) (city can be held liable in negligence action for violation of duty created by state statutes and municipal ordinances to conduct building inspections); *Lewis v. State,* 256 N.W.2d 181, 188 (Iowa 1977) (negligence action maintainable against State for personal injuries caused by state liquor store employee's breach of statutory duty not to sell liquor to a minor); *Harryman v. Hayles,* 257 N.W.2d 631, 638 (Iowa 1977) (negligence action may be brought when violation of statutory duty to maintain roads causes personal injury); *Koll v. Manatt's Transportation Co.,* 253 N.W.2d 265, 270 (Iowa 1977) (negligence action maintainable for employer's violation of standard of care imposed by OSHA or IOSHA); *Montgomery v. Engel,* 179 N.W.2d 478, 481 (Iowa 1970) (negligence action proper for breach of duty created by ordinance requiring landlord to install handrail on stairway); *Lattner v. Immaculate Conception Church,* 255 Iowa 120, 128–30, 121 N.W.2d 639, 644–45 (1963) (statutory fire-safety provision requiring exit door to open outward provided duty giving rise to negligence action by church visitor who sustained personal injuries when she fell down stairs); *Kisling v. Thierman,* 214 Iowa 911, 915–16, 243 N.W. 552, 554 (1932) (violation of statute governing operation of motor vehicles constitutes negligence *per se* ). Defendant's reliance on negligence cases to support his contention is misconceived, however.

Negligence is a common-law tort that is generally defined as conduct that "falls below the standard established by law for the protection of others against unreasonable risk of harm." *Restatement (Second) of Torts* § 282 (1965). An element of negligence is a duty or standard of care owed by the actor to the victim. *Wilson,* 282 N.W.2d at 667. Statutory enactment is one of the means by which such duty or standard of care may be created. *Id.*

A statutory duty or standard may thus establish an essential element for a negligence action. However, it does not provide the cause of action. The cause of action itself is a creation of the common law that is inherent in the tort of negligence. The duty or standard of care, statutory or otherwise, is merely an element of proof that comes into play after an action has been rightfully commenced pursuant to the preexisting common-law cause of action.

In support of his position that violation of a statutory duty gives rise to an individual cause of action in tort, plaintiff also relies on *Hall v. Montgomery Ward & Co.,* 252

N.W.2d 421 (Iowa 1977). In *Hall* this court held that violation of a criminal statute gave rise to a civil cause of action. *Id.* at 424. This holding, however, was based on section 611.21, The Code, which provides: "The right of civil remedy is not merged in a public offense, but may be enforced independently of and in addition to the punishment of the latter." This provision, which appears to have been enacted to abolish the common-law rule that civil wrongs are merged in felonies, 252 N.W.2d at 423, was previously interpreted as itself providing a civil tort action for violation of a criminal statute, *Call v. Larabee*, 60 Iowa 212, 214, 14 N.W. 237, 238 (1882); *Hall*, 252 N.W.2d at 423. Consequently, the *Hall* holding was based upon legislative intent to create a civil tort action, and is therefore in accord with the general rule that violation of a criminal statute gives rise to a civil cause of action only if such an action appears, by express terms or clear implication, to have been intended by the legislature. *Hall*, 252 N.W.2d at 423.

Plaintiff's case authority does not support his contention that a private cause of action arises solely from the violation of a statutory duty. We therefore turn to defendant's contention that to determine whether a cause of action should be judicially implied from a statute that does not expressly authorize private suits this court should employ the test formulated by the United States Supreme Court in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In *Cort* four factors were found to be relevant in determining whether a private remedy is implicit in a statute:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 39, 36 S.Ct. 482, 484, 60 L.Ed. 874 (1916) (emphasis supplied)— that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? *See, e.g., National Railroad Passenger Corp. v. National Assn. of Railroad Passengers*, 414 U.S. 453, 458, 460, 94 S.Ct. 690, 693, 694,

38 L.Ed.2d 646 (1974 (*Amtrak*)). Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? *See, e.g., Amtrak, supra; Securities Investor Protection Corp. v. Barbour*, 421 U.S. 412, 423, 95 S.Ct. 1733, 1740, 44 L.Ed.2d 263 (1975); *Calhoon v. Harvey*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964). And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? *See Wheeldin v. Wheeler*, 373 U.S. 647, 652, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605 (1963); *cf. J.I. Case Co. v. Borak*, 377 U.S. 426, 434, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423 (1964); *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 394–395, 91 S.Ct. [1999] 2003–2004, 29 L.Ed.2d 619 (1971); *id.* at 400, 91 S.Ct. at 2006 (Harlan, J., concurring in judgment).

*Id.* at 78, 95 S.Ct. at 2088, 45 L.Ed.2d at 36–37. For a history of the implied cause of action doctrine, *see generally* McMahon & Rodos, *Judicial Implication of Private Causes of Action: Reapprisal and Retrenchment*, 80 Dick.L.Rev. 167 (1976); Note, *Implied Causes of Action in the State Courts*, 30 Stan.L.Rev. 1243 (1978).

The Supreme Court has addressed the issue of implied causes of action on several occasions since *Cort*. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, —— U.S. ——, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982); *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

In *Curran*, the Supreme Court's most recent decision, private parties had brought actions for damages against brokers for violations of the Commodities Exchange Act (CEA). The CEA did not expressly provide for a private cause of action; the Act had been amended, however, and at the time of the amendment in question a private action existed by virtue of judicial implication. —— U.S. ——, 102 S.Ct. at 1839.

After reviewing the history of the CEA, the Court stated:

"When Congress intends private litigants to have a cause of action to support their statutory rights, the far better course is for it to specify as much when it creates those rights. But the Court has long recognized that under certain limited circumstances the failure of Congress to do so is not inconsistent with an intent on its part to have such a remedy available to the persons benefited by its legislation." *Cannon v. University of Chicago*, 441 U.S. 677, 717 [99 S.Ct. 1946, 1968, 60 L.Ed.2d 560] (1979).

Our approach to the task of determining whether Congress intended to authorize a private cause of action has changed significantly, much as the quality and quantity of federal legislation has undergone significant change. When federal statutes were less comprehensive, the Court applied a relatively simple test to determine the availability of an implied private remedy. If a statute was enacted for the benefit of a special class, the judiciary normally recognized a remedy for members of that class. *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33 [36 S.Ct. 482, 60 L.Ed. 874] (1916). Under this approach, federal courts, following a common-law tradition, regarded the denial of a remedy as the exception rather than the rule.

. . . .

During the years prior to 1975, the Court occasionally refused to recognize an implied remedy, either because the statute in question was a general regulatory prohibition enacted for the benefit of the public at large, or because there was evidence that Congress intended an express remedy to provide the exclusive method of enforcement. While the *Rigsby* approach prevailed, however, congressional silence or ambiguity was an insufficient reason for the denial of a remedy for a member of the class a statute was enacted to protect.

In 1975 the Court unanimously decided to modify its approach to the question whether a federal statute includes a private right of action. In *Cort v. Ash*, 422 U.S. 66 [95 S.Ct. 2080, 45 L.Ed.2d 26] (1975), the Court confronted a claim that a private litigant could recover damages for violation of a criminal statute that had never before been thought to include a private remedy. In rejecting that claim the Court outlined criteria that primarily focused on the intent of Congress in enacting the statute under review. The increased complexity of federal legislation and the increased volume of federal litigation strongly supported the desirability of a more careful scrutiny of legislative intent than *Rigsby* had required. Our cases subsequent to *Cort v. Ash*, have plainly stated that our focus must be on "the intent of Congress." *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 [101 S.Ct. 2061, 2066, 68 L.Ed.2d 500] (1981). "The key to the inquiry is the intent of the Legislature." *Middlesex County Sewerage Auth. v. National Sea Clammers Assn.*, 453 U.S. 1, 13 [101 S.Ct. 2615, 2622, 69 L.Ed.2d 435] (1981). The key to this case is our understanding of the intent of Congress in 1974 when it comprehensively reexamined and strengthened the federal regulation of futures trading.

. . . When Congress enacts new legislation, the question is whether Congress intended to create a private remedy as a supplement to the express enforcement provisions of the statute.

*Id.* at —— – ——, 102 S.Ct. at 1837–1838 (footnotes omitted).

The Court then focused on the state of the law at the time the legislation at issue was enacted and concluded that Congress

intended to preserve the preexisting remedy that had been recognized by judicial implication. *Id.* at ———— – ————, 102 S.Ct. at 1838–1841.

We believe the basic analytical approach of the Supreme Court is correct. As in all matters of statutory construction, the question whether a private cause of action exists under a statute that does not expressly provide for one is a matter of legislative intent. The Supreme Court decisions addressing the issue after *Cort* indicate that when legislative intent is otherwise clear, it is not necessary to resort to the four-factor test. *Compare, e.g., Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979) (applying *Cort* test), *with Touche Ross & Co. v. Redington,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (legislative intent ascertained without resort to *Cort* test). *See also Curran,* ——— U.S. at ———, 102 S.Ct. at 1844 ("In view of our construction of the intent of the legislature there is no need for us to 'trudge through all four of the factors when the dispositive issue of legislative intent has been resolved.'"). We also believe that when legislative intent is not otherwise clear the *Cort* test should be utilized to determine that intent. Since the fourth factor of that test concerns federal jurisdiction, however, we change it to the following: Will the implication of a private cause of action intrude into an area over which the federal government has exclusive jurisdiction, *see Jenkins v. J. C. Penney Casualty Ins. Co.,* 280 S.E.2d 252, 254 (W.Va.1981), or which has been delegated exclusively to a state administrative agency? *See* Note, *supra,* at 1259–61. Application of the test, of course, must also be generally tailored to the different jurisdictional concerns of the federal and state court systems.

II.  Chapter 507B is based upon model legislation proposed by the National Association of Insurance Commissioners entitled "An Act Relating to Unfair Methods of Competition and Unfair and Deceptive Acts and Practices in the Business of Insurance." At least forty-five states have adopted versions of this model act, Comment, *Insurers*

*and Third-Party Claimants: The Limits of Duty,* 48 U.Chi.L.Rev. 125, 146 n.75 (1981), thus, state legislation in this area is fairly uniform.

The basic issue with which we are confronted here has been addressed by the appellate courts of three other states. *See Royal Globe Insurance Co. v. Superior Court,* 23 Cal.3d 880, 592 P.2d 329, 153 Cal. Rptr. 842 (1979); *Scroggins v. Allstate Insurance Co.,* 74 Ill.App.3d 1027, 30 Ill.Dec. 682, 393 N.E.2d 718 (1979); *Jenkins v. J. C. Penney Casualty Ins. Co.,* 280 S.E.2d 252 (W.Va.1981). The principal question in all three cases was whether statutory language adopted from the Model Act and virtually identical to section 507B.4(9)(f) provided a private cause of action by implication or whether the state insurance commissioner had exclusive power to enforce the terms of the provision. We believe these cases should be examined in determining whether resort to the modified *Cort* test is necessary to ascertain legislative intent.

The West Virginia Supreme Court of Appeals applied the four-factor *Cort* test in *Jenkins* and held that a private cause of action was implied. 280 S.E.2d at 258. However, the holding was grounded in significant part upon a collateral statute that provided that a person injured by the violation of a statute could recover damages from the offender for the injuries sustained by reason of the violation, even though the statute itself imposed a penalty, unless such penalty were expressly stated to be in lieu of damages. *Id.* at 254 & n.2. In *Royal Globe* the California Supreme Court, in a four-three decision, also found a private cause of action by implication. But in making this determination, the court gave considerable emphasis to a difference in language between chapter 507B and the California statute, 23 Cal.3d at 884–86, 592 P.2d at 332–33, 153 Cal.Rptr. at 845–46, which will be discussed subsequently. In *Scroggins* the Illinois Appellate Court held that an individual did not have a cause of action against the insurance company. As in *Royal Globe,* however, the *Cort* test was not applied. Furthermore, the court found it

important that the plaintiff, a third-party claimant under a liability insurance contract, was not in privity of contract with the insurer. Consequently, the court concluded that the insurer had a duty to settle only with its insured, not such a third-party claimant. 74 Ill.App.3d at 1031–32, 30 Ill. Dec. at 685, 393 N.E.2d at 721.

Because of the differences in these cases from the one currently before us, we must analyze the issue independently. Since there is no clear indication of legislative intent in either chapter 507B or collateral authorities, we must apply the *Cort* test, as modified.

III. A. *Is the plaintiff a member of the class for whose special benefit the statute was enacted?*[2] In *Scroggins* the Illinois Appellate Court stated that "the statute would appear to have been enacted *for the benefit of the insured* ... as well as to provide an administrative enforcement mechanism *for the benefit of the public at large.*" (Emphasis added). 74 Ill.App.3d at 1034, 30 Ill.Dec. at 687, 393 N.E.2d at 723. Accordingly, the court, citing *Cort*, concluded that the plaintiffs did not fall within the class of persons the statute was designed to protect. *Id.* at 1034, 30 Ill.Dec. at 687, 393 N.E.2d at 723. Upon close examination, however, we believe it is clear that the coverage of section 507B.4(9), as well as chapter 507B generally, is not limited to activities between an insured and his or her insurance company, but also extends to third-party claimants. *See Jenkins*, 280 S.E.2d at 255; *Royal Globe*, 23 Cal.3d at 888, 592 P.2d at 334, 153 Cal.Rptr. at 847.

A number of the unfair claim settlement practices of section 507B.4(9) are broadly worded prohibitions governing "claims" generally. *See* § 507B.4(9)(b)–(f) & (m),

The Code. Consequently, the fact that other prohibited practices expressly distinguish between "insureds" and "claimants," *see* § 507B.4(9)(g) & (i)–(1), The Code, indicates that the legislature specifically identified the class of persons it intended to protect and that the provisions referring generally to "claims" are equally applicable to insureds and third-party claimants. *Jenkins*, 280 S.E.2d at 256. We therefore conclude that plaintiff is a member of the class of persons for whose special benefit section 507B.4(9)(f) was enacted.

B. *Legislative intent, either explicit or implicit, to create or deny a remedy.* The enactment of chapter 507B is accompanied by very little visible legislative history, and the model legislation and its accompanying drafting notes provide no insight toward resolution of the issue. Consequently, legislative intent will have to be derived from the purpose for which the statute was enacted and from the face of the provision itself.

Unlike the situation in *Curran*, there was no existing remedy when section 507B.4(9)(f) was enacted. A collateral statutory cause of action did not exist and a common-law tort action was not, and is not now, recognized for an insurer's bad-faith failure to settle an insurance claim with a party. *See Long v. McAllister*, 319 N.W.2d 256, 262 (Iowa 1982) (insurer held not directly liable to a third party for the tort of failure to settle an insurance claim); *also see M–Z Enterprises v. Hawkeye-Security Insurance Co.*, 318 N.W.2d 408, 414–15 (Iowa 1982) (insured's tort action against insurer for tort of failure to settle not reached due to facts, but our lack of case authority on this action discussed).[3] Conse-

---

**2.** This factor is also utilized in negligence actions to determine whether a statutory provision provides a duty or standard of care. *See Wilson v. Nepstad*, 282 N.W.2d 664, 667 (Iowa 1979) ("Duty can be created by statute if the legislature purposed or intended to protect a class of persons to which the victim belongs against a particular harm which the victim has suffered."). *See also Lattner v. Immaculate Conception Church*, 255 Iowa 120, 129, 121 N.W.2d 639, 645 (1963) (general statutory duty

is ordinarily for benefit of all persons likely to be injured from its nonobservance); *Hansen v. Kemmish*, 201 Iowa 1008, 1012, 208 N.W. 277, 279 (1926) (same). It should be noted that this opinion does not in any way affect a common-law negligence action.

**3.** We recognize that due to the nature of workers' compensation insurance a workers' compensation claimant may stand in a position different from that of a third-party claimant under an ordinary liability insurance policy.

quently, legislative silence cannot be construed as intent to preserve a preexisting remedy. *See Curran,* —— U.S. at ——, 102 S.Ct. at 1847.

The only explicit statement of legislative intent in chapter 507B is contained in section 507B.1, The Code, which provides:

> The purpose of this chapter is to *regulate* trade *practices* in the business of insurance . . . by defining, or providing for the determination of, all such *practices* in this state which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined.

(Emphasis added). This provision suggests that chapter 507B is essentially regulatory in nature. *Contra Jenkins,* 280 S.E.2d at 257 ("the strong policy declaration . . . against unfair insurance practices initially suggests the appropriateness of a private cause of action"). Moreover, the Act expressly invests the insurance commissioner with specified administrative powers: to examine and investigate the affairs of every person engaged in the insurance business in this state, § 507B.3, The Code; to issue charges and hold hearings concerning alleged violations of the unfair methods of competition and unfair or deceptive acts or practices provisions of chapter 507B, § 507B.6, The Code; to issue cease and desist orders, § 507B.7(1), The Code; to impose monetary penalties (up to $1000 per act or violation, but not to exceed an aggregate of $10,000, unless the person knew or reasonably should have known of the violation, in which case a penalty of up to $5000 per act or violation, but not to exceed an aggregate of $50,000 in a sixth-month period, may be imposed), § 507B.7(1)(a), The Code; and to suspend or revoke licenses, § 507B.7(1)(b). These express administrative remedies, if properly enforced, are consistent with, and adequate to achieve, the legislature's stated purpose. *See* Note, *supra,* at 1260. *But see Jenkins,* 280 S.E.2d at 257.

Section 507B.8 provides in part: "No order of the commissioner under this chapter or order of a court to enforce the same shall in any way relieve or absolve any person affected by such order from any liability under any *other* laws of this state." (Emphasis added). The *Royal Globe* court found that the elimination of the word "other" from the California Act indicated that the legislature intended to provide a private cause of action. 23 Cal.3d at 886, 592 P.2d at 333, 153 Cal.Rptr. at 846.

The fact that the term "other" was retained by the Iowa legislature in enacting chapter 507B does not, of course, necessarily mean that it had a contrary intent. Yet, section 507B.12 gives the insurance commissioner authority to promulgate rules to identify the acts and practices prohibited by sections 507B.4 and 507B.5, but expressly provides that such "rules shall not enlarge upon or extend the provisions of such sections." The same provision also provides that "[t]he *powers vested in the commissioner* by this chapter shall be additional to any other powers to enforce any penalties, fines, or forfeitures authorized by law . . . ." (Emphasis added). While section 507B.12 clearly reveals that the legislature did not intend the chapter to be the exclusive means of enforcing the acts and practices prohibited therein, we also believe it indicates that the legislature, in enacting chapter 507B, intended only to invest the insurance commissioner with administrative enforcement powers and that the chapter not be expanded in the exercise of administrative or judicial discretion. Accordingly, we hold that the legislature implicitly intended the insurance commissioner's powers to be the exclusive means of enforcing section 507B.4(9)(f).

C. *Is a private cause of action consistent with the underlying purpose of chapter*

---

At least one state has recognized a common-law tort claim for bad faith in the handling of workers' compensation claim. *See Coleman v. Universal Insurance Co.,* 86 Wis.2d 615, 273 N.W.2d 220 (1979), *discussed in Kranzush v.* *Badger State Mutual Casualty Co.,* 103 Wis.2d 56, 307 N.W.2d 256 (1981). Whether plaintiff may have a common-law tort action is not at issue here, however; he claims only a cause of action under section 507B.4(9)(f).

*507B?* Were it not for our conclusion that the legislature intended administrative sanctions to be the exclusive enforcement mechanism for section 507B.4(9)(f), we believe a private cause of action would be consistent with the underlying purposes of the Act. An action for money damages provides an injured party with a meaningful incentive to seek enforcement of the chapter's prohibitions and also provides a meaningful deterrent against future violations. *See Jenkins,* 280 S.E.2d at 258. To judicially imply a cause of action in this case, however, would be to override the legislative intent we have inferred from the text of chapter 507B.

D. *Will the implication of a private cause of action intrude into an area over which the federal government has exclusive jurisdiction or which has been delegated exclusively to a state administrative agency?* Congress has declared "that the continued regulation and taxation by the several States of the business of insurance is in the public interest." 15 U.S.C. § 1011 (1976). Therefore, a private cause of action would not intrude into an area regulated by the federal government. Since we have concluded that the legislature intended section 507B.4(9) to be enforced exclusively by the insurance commissioner, however, it would intrude upon the authority delegated to the commissioner.

We hold that section 507B.4(9)(f) does not provide plaintiff with a cause of action against defendant. This answer to the first certified question renders the second question moot.

CERTIFIED QUESTIONS ANSWERED.