DIMITRIOS KOUZOUKAS et al., Plaintiffs-Appellants, v. CHRIS CHAMOP-OULOS et al., Defendants-Appellees.

(No. 53797;

First District—December 30, 1970.

*Modified upon denial of rehearing March 16, 1971.*

James B. Martin and John D. Vosnos, both of Chicago, for appellants.

Elward & Macie, of Chicago, (Joseph F. Elward and Edward S. Macie, of counsel,) for appellees.

## REVISED OPINION UPON DENIAL OF PETITION FOR REHEARING

Mr. PRESIDING JUSTICE EBERSPACHER delivered the opinion of the court:

This is an action for damages for breach of the covenant for quiet enjoyment of premises, conversion and trespass. The motion of defendants Oak Park Trust and Savings Bank, a corporation as Executor of the Estate of Joseph Cienki, deceased, and Cienki, Inc., a Delaware Corpora-

tión to strike and dismiss the second amended and supplemental complaint was granted and suit was dismissed as to these defendants, the court finding, pursuant to Supreme Court Rule 303, that there was no just reason for delaying enforcement or appeal. Plaintiff has filed this appeal from the lower court's order granting dismissal.

The complaint contains 7 counts and the sole issue before us is whether a cause of action is stated in any of them. To make this determination we turn to the complaint alone and bear in mind the burden is on the movant to show that the complaint fails to state a claim.

The basic facts alleged in the second amended supplemental complaint and underlying each count are as follows:

The plaintiffs purchased from the defendant Chamopoulos June 21, 1963, a restaurant business located on the premises of 2000 North Lincoln Parkway West, Chicago, Illinois, including chattels, improvements, equipment and good will for the sum of $42,000.00. $18,000.00 was paid on said date and the balance of $24,000.00 evidenced by a note payable in installments of $663.49 per month beginning August 1, 1963 and secured by a security agreement in the nature of a chattel mortgage and a finance statement filed with the Secretary of State, State of Illinois, under the provisions of the Uniform Commercial code.

At the time of the purchase of the restaurant and equipment, the plaintiffs entered into a lease dated June 21, 1963, in which Cienki, Inc., a Delaware corporation, licensed to do business in Illinois, was the Lessor and plaintiffs were Lessees. The term of the lease commenced on July 1, 1963, and expires December 31, 1973. This lease was assigned to Chamopoulos as security with the consent of the Lessor, Cienki, Inc.

The Plaintiffs further became obligated to Chamopoulos in the amount of $1,500.00 for advance of monies to Cienki who required a bonus for his cooperation.

The sum of $3,720.00 had been deposited by Chamopoulos, as a rent deposit, with Cienki, Inc. which deposit was assigned to plaintiffs, who gave their note in such amount to Chamopoulos.

The value of the chattels conveyed by Chamopoulos to plaintiffs in the transaction were of slight value compared to total purchase price of $42,000.00 so that most of said purchase price was attributable to good will connected with the business in its location and that plaintiffs could only recoup their investment substantially over the whole of the term of the lease.

The good will acquired by the plaintiffs uniquely attached to the location of the premises and without the facilities thereto engagement in such business was substantially worthless. The demised premises were on the ground floor and attached to a five-story hotel located at the

corner of West Armitage and North Lincoln Parkway fronting upon Armitage.

Fires broke out in the demised premises on September 5, 1963, and September 7, 1963, causing slight damage to the demised premises but damage to the hotel being less than the whole destruction thereof.

A contractor hired by the plaintiffs estimated that the repairs could be made in a short while for a sum of $2,100.00 and the premises restored as there was no structural damage thereto, but only minor repairs to ceiling, canopys and dining room ducts.

The cost of repairing the hotel structure annexed to the restaurant premises was estimated at $60,000.00 which expenditure represented a small portion of the value of the whole building or cost of replacement thereof.

On October 18, 1963, the defendant, Cienki, Inc., addressed a letter to plaintiffs and the defendant Chamopoulos declaring termination of lease on the ground of untenantability of the premises.

Thereafter the defendant, Cienki and Cienki, Inc. entered into a contract with the Bosley Wrecking Co. to raze the building including the demised premises. Bosley Wrecking Co. sold the mortgaged chattels, fixtures and personal property and delivered its bill of sale therefor to Gold Bros., Inc.

■■ The first count alleges that defendants wrongfully terminated the lease under a provision thereof giving Lessor the right to do so if the premises are rendered "untenantable" by fire. If the premises were not in fact untenantable then such termination would be wrongful. We have defined untenantability as a condition which exists when destruction of demised premises is of such a nature that it cannot be used for the purposes for which it was rented and cannot be restored to a fit condition by ordinary repairs made without unreasonable interruption of the lessee's use. The question of untenantability is a question of fact, and Count I is held to properly state a claim. (*Presbyterian Dist. Service v. Chgo. Nat. Bank* (1970), 28 Ill.App.2d 147, 155, 171 N.E.2d 86.) The basic claim stated is one in damages for wrongful termination of the lease.

■■ Count II of the complaint states a cause of action for breach of an implied warranty in the lease to the quiet and peaceful enjoyment of the demised premises. It complains of defendants Joseph Cienki, deceased, and Cienki, Inc. Count III states the same cause of action differing only in that Oak Park Trust and Savings Bank is impleaded as Executor of the Estate of Joseph Cienki. Both of these counts have their basis in the facts alleged in the complaint and set forth above and arise out of the alleged wrongful termination of the lease.

Counts IV and V allege that the defendants named in these counts knew that chattels and other personal property owned by plaintiffs were located on the premises and that these defendants maliciously conspired together to deprive plaintiffs of their property. The essence of the action is the wrongful conversion of property and the counts state a claim in trover for the damages suffered by this wrongful conversion.

Count VI contains allegations setting forth a claim in trespass alleging defendants entered upon the demised premises dispossessing plaintiffs therefrom, seized plaintiffs' property and unlawfully disposed of the same.

Count VII of the complaint seeks the appointment of a receiver *pedente lite* for the assets of Cienki, Inc. to preserve the same pending the outcome of this cause of action. The count asserts that the premises, the subject of this action, constitute a valuable asset and plaintiffs' interests may only be protected by the preservation of the same as security for any judgment plaintiffs may recover.

In conclusion, the 7 counts are all based upon the theory that the lease termination was unlawful because the premises were not "untenantable". The tenantability of the premises can only be determined by the trier of fact. Plaintiffs' allegation in an earlier complaint (Count VI, Para. 6, Supplemental Complaint), that defendant Cienki, Inc., determined that the premises were untenantable and so advised plaintiffs by its letter, and the previously alleged fact that the Department of Buildings, City of Chicago, denied plaintiffs' application to make repairs, are of questionable probative value on the question of whether the premises were tenantable, and from such bare allegations an inference of untenantability cannot be reasonably drawn. Neither do such allegations on the part of plaintiffs require that in their pleadings they negate the possible defenses of defendants. Nor do we conclude that the allegations of the original complaint made on information and belief, regarding cost of repairing the annexed hotel structure eliminating building code violations and defendants ability to restore, or the prayer in that complaint for cancellation of the lease, are to be considered as judicial admissions of untenantability on the part of plaintiffs.

■■ The motion to strike did not spell out whether or not the lessees vacated or abandoned the premises; here appellees contend that such conduct on the part of lessees terminated the lease by its own terms. Pleading the lease did not place an obligation on plaintiffs to anticipate such defense and negate it by allegations in their amended supplemental complaint.

A motion to dismiss admits all facts well pleaded as well as all reasonable inference therefrom favorable to the plaintiff. (*Bishop v. Ellsworth,*

91 Ill.App.2d 386, 234 N.E.2d 49.) If on the basis of the alleged facts and all reasonable inference therefrom, standing alone and uncontested, there exists any possibility of recovery, the order of dismissal must be vacated. *Palier v. New City Iron Works*, 81 Ill.App.2d 1, 225 N.E.2d 67; *Federal Savings & Loan Corp. v. Quinn*, 81 Ill.App.2d 299, 225 N.E.2d 693.

Therefore we reverse and remand to the trial court for proceedings not inconsistent with this opinion.

Reversed and remanded.

GOLDENHERSH and G. MORAN, JJ., concur.