Robert W. Cacaos, J.
In this summary proceeding, the court is called upon to interpret a clause found in the Real Estate Board of New York standard form of store lease. That clause, contained in article 9, read as follows: “ If the demised premises are totally damaged or are rendered wholly untenantable by fire or other cause, and if Landlord shall decide not to restore or not to rebuild the same, or if the building shall be so damaged that the Landlord shall decide to demolish it or to rebuild it, then or in any of such events Landlord may, within ninety (90) days after such fire or other cause, give Tenant a notice in writing of such decision * * * and thereupon the term of this lease shall expire by lapse of time upon the third day after such notice is given, and Tenant shall vacate the demised premises and surrender the same to Landlord.7 7
On January 11, 1971 a fire occurred damaging the demised premises — a retail store — of the tenant, and on February 19, 1971, landlord sent the tenant a written notice of termination of lease pursuant to article 9 on the grounds that the ‘ ‘ leased premises 7 7 of the tenant 11 became untenantable 7 7 and that the landlord had decided ‘‘ not to rebuild the same.7 7 A trial was held at which the landlord introduced photographs of the premises after the fire, and the tenant produced, as an expert, an architect who testified at length to the degree of damage.
Much was made at the trial and in the briefs submitted to the court of the so-called ‘‘ marine rule.7 7 This provides that if the cost of restoration is more than one half the value of *827 the building just before the fire, then there is total destruction. (Corbett v. Spring Carden Ins. Co., 155 N. Y. 389.) Courts have also made use of this standard in cases involving language such as “ substantial destruction” and “if the damage is so extensive as to amount practically to the total destruction ”. (Leone v. Russo, 190 Misc. 984, 985, affd. 275 App. Div. 674 ; Bettinelli v. Peterson Kane, Inc., 62 Misc 2d 444.)
Whether or not the application of the marine rule would lead the court to find that the premises were “totally damaged,” the fact that the provision in the lease contains the term “ wholly untenantable ” seems plainly to cpntemplate the possibility that the premises may be rendered untenantable without being totally damaged. (See 49 Am. Jur. 2d, Landlord and Tenant, § 607.) No case has been brought to the court’s attention in which the marine rule was applied to “ tenantability ”, nor does the lease describe the manner in which tenantability is to be determined.
The courts have generally defined tenantability not in terms of amount of damage or destruction, but in terms of fitness for occupancy. In Gerson v. Blanck (79 Misc. 24, 27), the court held that a tenantable condition is “ such condition as would permit of their use by [a tenant] without violation of the law, for the purposes contemplated by the lease.” The converse, “ untenantable,” has been held to mean “ ‘ not fit to be rented or occupied by a tenant’”. (Reischmann v. Hartog Candy Co., 132 N. Y. S. 435, 437.)
The proof adduced at the trial in the instant case shows that the premises have not been occupied or used at all by the tenant since the date of the fire. This fact, by itself, would not be at all conclusive, for the court must inquire into whether the tenant might have occupied the premises. (It should be noted that there may be occupancy not inconsistent with a claim that the premises occupied were, in fact, untenantable [Kip v. Merwin, 52 N. Y. 542]). In addition, however, the evidence indicates that a large portion of the roof was destroyed, opening part of the premises to the sky; that the nonstructural elements were damaged to the extent of 80%, these including the interior stairway, the roofing, which was totally destroyed, and the interior partitions which either showed substantial fire damage or were collapsed; and that the finishes were damaged to the extent of 35%, with the floor, wall and ceiling finishes being totally destroyed. In addition, evidence was also introduced to the effect that the electrical system was 95% destroyed, and that the air conditioning and heating systems were both 100% destroyed. The question as to whether the installation, maintenance and *828 repair of these systems were the responsibility of the landlord or the tenant under the lease is independent of the question of whether the premises were tenantable; the fact remains that the premises were without power, heat or air conditioning.
The court concludes that the premises were rendered “ wholly untenantable ” under article 9 of the lease. There is no way in which the premises could have lawfully, safely and practically been occupied or used by the tenant for any purpose whatsoever, much less for the purpose of conducting a retail business. Therefore, as proper notice was given, the lease was terminated on February 23,1971 three days after the notice was received by the tenant, and the tenant’s liability for rent, under article 9, ceased on January 17, 1971, the day after the fire. It follows that the tenant is entitled to the return of the prorated portion of the January rent.
The tenant contends that the landlord intends to rebuild, even though it is stated in the notice of termination that ‘ ‘ the undersigned Landlord, itself, has decided not to rebuild the same ”, and that this intent bars a termination of the lease. The tenant argues that the word “ rebuild” must be interpreted broadly “so as to include both the making of changes in the demised premises and the remodeling of the demised premises. ’ ’
The premises are a one-story taxpayer containing 11 stores, one of which is leased to this tenant. The majority of the other stores were back in business within a short time. The walls of the taxpayer are undamaged. To interpret the word ‘ ‘ rebuild ’ ’ in the broad sense to include any alteration or modification of the premises would mean that the landlord could never terminate the lease under a situation such as this, unless the use to which the premises were to be put after reconstruction would have none of the characteristics of a retail business; for, under the tenant’s contention, any alteration, remodeling or reconstruction of whatever magnitude, unless the character of the use was changed, would be a rebuilding and would bar the termination of the lease. The landlord would not be able to rent to any retail tenant. This interpretation would frustrate the plain intent of the agreement and will not be allowed. (Crosstown Syndicate v. Messinger, 112 N. Y. S. 2d 139.)
This is not to say that the decision of the landlord to rebuild or not to rebuild is beyond inquiry, for the decision may be evaluated to determine the truth and reasonableness of the action (Matter of Noah's Ark, Division of Eckmar Corp. v. Geib, 56 Misc 2d 800, affd. 31 A D 2d 886).
*829 In the instant case, the rationale for the landlord’s decision is obvious. The landlord would have to spend more than $20,000 to recreate tenant’s store to receive as rent a total return of $15,000. The landlord would be required to construct a store for the use of a tenant whose lease would expire in approximately 16 months. The landlord had, prior to the fire, attempted to terminate the lease by action in this court. Clearly, the landlord does not intend to recreate the premises as they existed before the fire, and its decision not to rebuild the premises was justified under all of the circumstances.
The landlord, in its petition, also demands reasonable attorney’s fees. Article 19 of the lease reads as follows: “ If tenant shall default in the observance or performance of any term or covenant on tenant’s part to be observed or performed under or by virtue of any of the terms or provisions in any article of this lease, landlord may immediately or at any time thereafter and without notice perform the same for the account of tenant, and if landlord makes any expenditures or incurs any obligations for the payment of money in connection therewith including, but not limited to, attorneys’ fees in instituting, prosecuting or defending any action or proceeding, such sum paid or obligations incurred with interest and costs shall be deemed to be additional rent hereunder and shall be paid by tenant to landlord within five (5) days of rendition of any bill or statement to tenant therefor.”
The tenant’s main contention in opposition to the awarding of legal fees to the landlord is that the lease clause set forth above does not cover the situation where the lease is terminated. This is so. However, paragraph 21 of the lease, which reads as follows: ‘ ‘ Upon the expiration or other termination of the term of this lease, Tenant shall quit and surrender to Landlord the demised premises, broom clean, in good order and condition, ordinary wear excepted, and Tenant shall remove all of its property. Tenant’s obligation to observe or perform this covenant shall survive the expiration or other termination of the term of this lease ”, does cover the precise situation that occurred in this case. This paragraph creates an obligation on the part of the tenant to vacate on termination, a violation of which by the tenant will incur the obligation to pay reasonable counsel fees as per the lease agreement (Airways Supermarket v. Santone, 107 N. Y. S. 2d 187, affd. 280 App. Div. 924). The landlord is entitled to reasonable legal fees, the amount to be determined at a hearing to be held in Part H of this court.