**RESTAURA, INC., Appellee,**

v.

**ST. LOUIS CONCESSIONS, INC., Appellant.**

**No. 94–2857.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1995.

Decided April 12, 1995.

Timothy Nicholas Vujnich, St. Louis, MO, argued, for appellant.

Peter W. Herzog, III, St. Louis, MO, argued (Margaret C. Nikolai, on the brief), for appellee.

Before BOWMAN, Circuit Judge, JOHN R. GIBSON, Senior Circuit Judge, and HANSEN, Circuit Judge.

BOWMAN, Circuit Judge.

This is a declaratory judgment action involving a commercial lease. Federal subject-matter jurisdiction is based on diversity of citizenship. St. Louis Concessions, Inc. ("SLC") appeals from an order of the District Court[1] granting partial summary judg-

---

**1.** The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

ment in favor of Restaura, Inc. ("Restaura"). The court held that SLC, the lessor, had not effectively terminated a lease entered into with Restaura, the lessee, and that the lease remains in full force and effect. We affirm.

On August 1, 1993, St. Louis lost the "Spirit of the River," an entertainment complex on the Mississippi riverfront. On the day in question, with the Mississippi River twenty feet above the flood stage, the complex broke from its moorings and was swept down river into the Poplar Street Bridge. Leaving the third and fourth levels behind, the remainder of the complex floated downstream, from whence it eventually was recovered by the Coast Guard.

Part of this complex was the subject of a lease agreement between SLC and Restaura. The leased premises

> consist[ ] of three barges[2] and the structures and improvements constructed thereon, which were moored approximately 250 feet north of the north leg of the Gateway Arch.... Restaura operated a Burger King restaurant as well as a game arcade, gift shop and other tourist and entertainment attractions on the [complex].

Appellant's Brief at 3. Restaura notified SLC on August 18, 1993 of its obligation to repair or replace the premises under the terms of the lease agreement.

On September 8, 1993, Restaura exercised an option to extend the lease for five years beyond its original expiration date. On September 10, 1993, however, SLC, having already received Restaura's notice exercising its option to extend the lease, attempted to terminate the lease.[3] Restaura brought suit, and the District Court entered an order

granting partial summary judgment to Restaura and denying SLC's cross-motion for a declaration that the lease was subject to early termination. SLC appealed. The order appealed from did not dispose of all claims in the case, and was therefore not a final order reviewable by this Court. The District Court, however, upon becoming aware of the problem, removed the jurisdictional impediment by entering an order pursuant to Fed. R.Civ.P. 54(b) and 28 U.S.C. § 1292(b), thus clearing the way for us to exercise jurisdiction over this interlocutory appeal. *Restaura, Inc. v. St. Louis Concessions, Inc.*, No. 4:93CV2046–DJS, Order of February 7, 1995. Agreeing that we should exercise our discretion to allow the appeal to be taken, *see* 28 U.S.C. § 1292(b), we proceed to the merits of the case.[4]

■ Seeking reversal, SLC relies upon Section 21 of the lease agreement, which reads in pertinent part:

> In the event of any damage or destruction occurring during the last five (5) years of the term of this Lease to the extent of Fifty Percent (50%) or more of the insurable value of the structure, Landlord may, by notice to Tenant within forty (40) days after the occurrence of the damage or destruction, in lieu of repairing or replacing said structures, elect to terminate this Lease as of the date of the damage or destruction.

Joint Appendix ("Jt.App.") at 64.

According to SLC, the District Court erred by failing to recognize that SLC effectively exercised its election to terminate the lease by means of the notice sent to Restaura on September 10.

---

**2.** The lease agreement of July 5, 1985 specifies *three* barges, while the amendment of December 14, 1990 specifies *two*. *See* Joint Appendix ("Jt.App.") at 8, 38. A letter of September 8, 1993 sent by the attorney for SLC notes that "the demised premises includes two entrance (ramp) barges and the large, so-called Buyer [sic; Burger] King barge." Jt.App. at 82.

**3.** While the termination notice is dated September 8, 1993, the parties agree that the notice was not mailed until the 10th. *See* Appellee's Brief at 3, Appellant's Brief at 4. SLC concedes that it received Restaura's notice to extend the lease before SLC sent its notice of termination. The

termination notice incorrectly gives the date of the damage to the premises as August 5, 1993. Jt.App. at 83. Because we find for Restaura on other grounds we do not reach the question of what effect, if any, this mistake might have on SLC's notice of termination.

**4.** While it has no direct bearing on our decision, we note that on July 23, 1993, SLC had entered into an agreement, contingent in part upon termination of SLC's lease with Restaura, to sell part of the Spirit of the River complex, along with rights to its mooring lease, to Argosy Gambling Company for a purchase price of $37,500,-000. *See* Jt.App. at 151, 163, 171.

Restaura counters with Section 3 of the lease agreement, which states that:

Landlord grants Tenant the option to make successive extensions of this Lease for two terms of five (5) years and then for whatever term remains on Landlord's lease with the City of St. Louis entered into in 1984, respectively. To exercise each option, Tenant shall give Landlord written notice not less than ninety (90) days prior to the expiration of the then existing term.

Jt.App. at 53. Restaura contends that the District Court was correct in finding that Restaura had extended the lease for five years by giving SLC the notice required by Section 3 before SLC made any attempt to exercise its right of termination under Section 21, so that the lease was not in its last five years when the damage to the leased premises occurred and, consequently, SLC's notice of termination was ineffective.

We note that each party literally has satisfied the terms and conditions of the section of the lease on which it relies. The two sections, as brought into play in this case, are in conflict. There is no provision in the agreement concerning interpretation of conflicting sections. As the District Court notes, "[t]he lease fails to address the eventuality present here, i.e., [Restaura's] exercise of its right to extend the lease occurring within the forty day period during which [SLC] is entitled to terminate the lease." *Restaura, Inc. v. St. Louis Concessions, Inc.,* No. 4:93CV2046–DJS, Order at 5, June 12, 1994. Both parties, however, are in agreement that the lease must be construed to determine the intention of the parties and to give effect to that intention. Appellee's Brief at 8 and Appellant's Brief at 9 (citing *Tri–Lakes Newspapers, Inc. v. Logan,* 713 S.W.2d 891, 893 (Mo.App.1986)).

In its brief, Restaura argues that "[t]he obvious intention of the early termination provision here was to relieve the landlord of the obligation to rebuild if the tenant was not going to occupy the leased premises for a period of time long enough to justify the expense of rebuilding." Appellee's Brief at 8. SLC argues, on the other hand, that these provisions "are merely the incorpo-

ration into this lease of a rule generally known as the 'marine rule,' which provides that is [sic; if] the cost of restoration of a leased premises is more than one-half the value of the premises, the premises are deemed totally destroyed." Appellant's Brief at 11 (citing *Old Line Co. v. Getty Square Department Store, Inc.,* 66 Misc.2d 825, 322 N.Y.S.2d 149, 151 (N.Y. City Ct.1921)). SLC contends that "[t]his clause is obviously, in historical significance and intent, a clause intended by the parties to benefit [SLC] as landlord." Appellant's Brief at 11. Although these arguments may help us to understand what each party had in mind when Section 21 was drafted and included in the lease, they do not take us very far in our task of reconciling Section 21 with Section 3.

"In Missouri the rule is that a contract must be construed so as to give effect to the intention of the parties as collected from the whole instrument, if possible, and conflicting provisions must be reconciled if reconciliation can be effected by any reasonable interpretation." *Miravalle Supply Co. v. El Campo Rice Milling Co.,* 181 F.2d 679, 683 (8th Cir.) (citations omitted), *cert. denied,* 340 U.S. 822, 71 S.Ct. 56, 95 L.Ed. 604 (1950). Here, the District Court read the lease "as conferring rights upon either party to exercise at their discretion." Further, the Court found that "[i]n this case it appears that plaintiff has exercised its rights first and thus effectively extended the lease term to fifteen years. thus neutralizing defendant's power to terminate the lease under paragraph 21." *Restaura,* No. 4:93CV2046–DJS, Order at 7, June 12, 1994.

■ As a matter of law, we think that the District Court was correct in its decision. The law favors that construction validating not only the entire contract, but each of its constituent provisions. *See Boehmer Coal Co. v. Burton Coal Co.,* 2 F.2d 526, 528 (8th Cir.1924); *Phillips v. American Nat. Assur. Co.,* 227 Mo.App. 1136, 58 S.W.2d 814, 816 (1933). We find nothing in the language or the structure of the lease to support SLC's argument that an after-the-fact notice of termination under Section 21 can trump a prior notice of extension under Section 3. Had the parties intended to make Section 21 control-

ling, they could have done so, either by inserting explicit language to that effect, or by limiting the circumstances in which Section 3 could be invoked. They did neither. We will not read provisions into the lease that the parties have not chosen to include.

Our disposition of the case makes it unnecessary for us to consider Restaura's other arguments for affirmance. For the reasons stated, the order of the District Court granting partial summary judgment to Restaura is affirmed and the case is remanded for further proceedings.