**Ricardo FLORES and Yolanda Flores, Plaintiffs,**

v.

**ALLSTATE TEXAS LLOYD'S COMPANY, Defendant.**

**Civil Action No. M–02–095.**

United States District Court,
S.D. Texas,
McAllen Division.

Oct. 21, 2002.

Savannah L. Robinson, Attorney at Law, Danbury, TX, for Plaintiffs.

Jeffrey Dale Roerig, Rene O. Oliveira, Roerig, Oliveira & Fisher, Brownsville, TX, Ronald Joseph Restrepo, Doyle Restrepo, et al, Houston, TX, Martin R. Sadler, Doyle, Rider, Restrepo, Harvin, Robbins, Houston, TX, for Defendant.

## MEMORANDUM OPINION EXCLUDING PROPOSED EXPERT TESTIMONY

CRANE, District Judge.

Defendant Allstate Texas Lloyd's Company moves to exclude testimony on the health effects of household mold upon Plaintiffs by their medical expert, Dr. Alberto Gutierrez.[1] Defendant contends the testimony of this expert is not sufficiently reliable under applicable law to be admitted into evidence.[2] After Defendant asserted proper challenges to the proposed testimony of Dr. Gutierrez, the Plaintiffs failed to meet their burden to demonstrate the reliability and relevance of Dr. Gutierrez's opinions as set forth in his deposition of October 3, 2002 (hereinafter "Depo.").

### Factual Background

Plaintiffs Ricardo and Yolanda Flores purchased an insurance policy from Defendant Allstate Texas Lloyd's Company insuring their home in McAllen, Texas. Plaintiffs seek recovery for breach of contract, bad faith, and breach of statute, and seek a declaration of their rights and a temporary restraining order relating to coverage for water damage and ensuing mold growth in their home. As part of their claims, Plaintiffs assert their home became untenantable because Mrs. Flores suffered allergic health effects from her exposure to the mold in the home, a covered loss. *See* Plaintiffs Supplemental Response (Doc. # 60) at 6, ¶ 14. If untenantable, Plaintiffs claim they would be entitled to alternate living expenses ("ALE") under the terms of the policy. Defendant denies Plaintiffs have suffered any adverse health consequences from exposure to mold and contends that no reliable evidence exists establishing any adverse health consequences from ordinary exposure to household mold as exists in this case. Consequently, Defendants deny untenantability.

### Evidence Necessary to Establish Untenantability

Whether the Court need reach the issue of the admissibility of the proposed expert testimony depends on whether such testimony is necessary for Plaintiffs to establish their untenantability claim. Not surprisingly, the parties are in disagreement over the evidence necessary to establish untenantability under the terms of the insurance policy. The parties agree that no Texas court has addressed this issue and the policy does not define untenantability. Plaintiffs assert that untenantability should be defined as "whether [the home] is acceptable [to Plaintiffs] considering their normal standard of living." *Id.* The Court was able to find only one case to support this position. In *Hackbarth v. Ross,* 1997 WL 633548 (Conn.Super.1997), the Connecticut state court held in an unpublished decision that a dwelling may become untenantable merely because the occupant had a subjective belief of its untenantability so long as the subjective belief was reasonable. Unfortunately, no other jurisdiction has

---

1. The Court held an evidentiary hearing on this matter on September 23, 2002.

2. Plaintiffs proposed expert, Dr. Gutierrez, is a medical doctor who is Board certified in family practice, or general medicine. Dr. Gutierrez is not a pulmonologist, is not an allergist, is not a toxicologist and is not an epidimiologist. Notwithstanding, Defendant makes no challenge to his qualifications. Accordingly, the Court does not reach the issue of his qualifications.

reached this conclusion and the Court finds this decision unpersuasive.

Instead, the Court believes that untenantability should be defined by a reasonable person standard. This standard has been adopted by numerous other jurisdictions and gives the term its plain meaning. Therefore, an untenantable home is one which cannot be used for the purposes for which it is intended and cannot be restored, using ordinary repairs, without unreasonable interruption of the occupancy. *Marcel Hair Goods Corp. v. Nat'l Savings & Trust Co.*, 410 A.2d 1, 6 (D.C. 1979); *Luis v. Ada Lodge # 3, Order of Odd Fellows*, 77 Idaho 392, 396, 294 P.2d 1095, 1098 (1956); *Kouzoukas v. Chamopoulos*, 133 Ill.App.2d 14, 17, 268 N.E.2d 261, 264 (1970); *Barry v. Herring*, 153 Md. 457, 461–62, 138 A. 266, 268–69 (1927); *Old Line Co. v. Getty Square Department Store*, 66 Misc.2d 825, 827, 322 N.Y.S.2d 149, 152 (1971); *Mottman Mercantile Co. v. Western Union Telegraph Co.*, 3 Wash.2d 62, 66, 100 P.2d 16, 17–19 (1940); *Overstreet v. Rhodes*, 97 S.E.2d 561, 562–63, 213 Ga. 181, 183–184 (1957). Texas law appears to be consistent with the reasonable person standard as well. *See Davidow v. Inwood North Professional Group*, 747 S.W.2d 373, 377 (Tex.1988) and *Edwards v. Ward Associates, Inc.*, 367 S.W.2d 390, 393 (Tex.Civ.App.-Dallas 1963, writ ref'd n.r.e.).

Under this standard, untenantability may be proved in a myriad of different ways. In this case, Plaintiffs seek to establish untenantability by showing that they are suffering adverse health effects from mold in their home which requires them to seek alternate living arrangements because they can no longer occupy the home without suffering such adverse health effects and cannot restore the home, using ordinary repairs, without unnecessary interruption. The parties disagree on what evidence is necessary to establish untenantablity on this basis. As such, the issue facing the Court is whether scientific evidence is necessary to prove that a home becomes untenantable when its occupants suffer adverse health consequences from mold alleged to exist in the home. Having determined that the subjective belief of the occupants that their home is not up to their "standard of living" is not competent evidence of untenantability, the Court now reaches the issue of whether the evidence proffered by Plaintiffs is competent to establish proof of untenantablity of their home because of alleged their health effects caused by exposure to mold in their home.

## Admissibility of Proposed Expert Testimony

The Federal Rules of Evidence, as interpreted by *Daubert v. Merrell Dow Pharms., Inc.* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny, govern whether evidence is competent and therefore admissible. Dr. Gutierrez's testimony must be relevant to be admissible. Fed.R.Evid. 402. In order to be relevant, Dr. Gutierrez' testimony must have the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without his testimony. Fed.R.Evid. 401. Therefore, in the context of this case, Dr. Gutierrez' testimony must make the existence of the alleged health effects in the Plaintiffs caused by their exposure to mold in their home more probable than without this testimony.[3]

---

3. At one point in their brief, Plaintiffs concede that they are not associating the particular mold in Plaintiffs' home to their particular health complaints. Plaintiffs Supplemental Response at p. 6, ¶ 16. However, they qualify this statement by claiming that it should be enough to show "that exposure to the agent would likely cause wounds." *Id.* at 7, ¶ 16. It is difficult to reconcile this qualification with their concession as there are a number of different interpretations to which this qualification lends itself. It appears most likely,

Dr. Gutierrez' testimony only makes this more probable if his testimony is reliable.[4]

 In determining reliability of the Plaintiffs proposed medical expert under Fed.R.Evid. 702, the Court must make a preliminary assessment as to whether the underlying reasoning and methodology are scientifically valid and can properly be applied. *Daubert,* 509 U.S. at 580, 113 S.Ct. 2786.[5] The Court considers the four factors articulated in *Daubert* in doing so.[6]

### 1. Whether the theory has been tested.

 The hypothesis which Plaintiffs postulate is that their claimed allergies are caused by the existence of mold in their homes. This theory has not been tested either by Dr. Gutierrez or any other expert[7] and, in fact, Dr. Gutierrez only assumes a connection between the two. Dr. Gutierrez was asked to assume that Ms.

Flores "has been tested for allergies and has been shown to be allergic to various forms of mold." Depo. at 8. However, nowhere does the record reflect that any of the Flores family underwent any testing to determine allergies to household molds. Dr. Gutierrez's testimony indicates that he saw nothing in the medical records to prove a specific allergy to mold—instead, when asked about the connection, he gives a hypothetical answer. " ... [A]nd if there are no other existing factors in the family, you know, in the house—cats, dogs, birds—and you say you have found the mold, whatever, I guess it's reasonable to assume that those allergins [sic] have caused exacerbation of the asthma and other allergies in this family." Further, Dr. Gutierrez claims that allergy testing exists that can " ... maybe determine the exact factor or factors causing that allergy...." Depo. at 25. However, he never conducted such testing on Plaintiffs and does not rely on such testing by any other doctor.[8] Nor was any dosage evaluation

---

however, that Plaintiffs are suggesting that it be enough to show that mold causes adverse health effects in some people without the need to show that mold in the Plaintiffs' home is actually causing them any health effects. It further appears that Plaintiffs suggest that this is all that their medical expert need establish in order to prove that their home is untenantable. For reasons stated herein, the Court rejects this position as being contrary to well established precedent in this Circuit.

4. Federal Rule of Evidence 702 requires that the testimony be both relevant and reliable. *Daubert,* 509 U.S. at 579–580, 113 S.Ct. 2786 (citing Fed.R.Evid. 702).

5. Once the movant properly challenges an expert's testimony, the party offering the expert then has the burden to prove by a *preponderance of the evidence* that the expert's testimony is reliable. *Tanner v. Westbrook,* 174 F.3d 542, 547 (5th Cir.1999). A party should support its response with an affidavit of the challenged expert, clarifying any confusion stemming from his deposition, and otherwise explaining why his opinions are reliable. *Ambrosini v. Labarraque,* 101 F.3d 129, 131–32 (D.C.Cir.1996).

6. Plaintiffs contend that the Court should not subject their proposed expert's testimony to the *Daubert* analysis because this Court should utilize a lesser "general causation" standard, rather than the "specific causation" standard to which the *Daubert* analysis is generally applied. This approach was rejected by this Circuit sitting *en banc* in *Moore v. Ashland Chemical, Inc.,* 151 F.3d 269, 276 (5th Cir.1998) and in *Bartley v. Euclid, Inc.,* 158 F.3d 261 (5th Cir.1998), both of which require the *Daubert* analysis even in cases of "general causation."

7. Plaintiffs fail to offer any publication, peer reviewed or otherwise, in support of the general proposition that the form of mold alleged to exist in the Plaintiffs' home may cause adverse health effects in humans generally.

8. Q. And you haven't ever run any of those tests on any members of the Flores family to attempt to identify the item that might be causing those symptoms?

A. No, I haven't, Counsel.
Depo. of Gutierrez at 25.

made of Plaintiffs' exposure to mold in their home.[9] Depo. at 8 and 30.

### 2. The known or potential for error in the technique.

The potential for error in Dr. Gutierrez's technique is virtually limitless. As Defendant points out, the final exchange in Dr. Gutierrez' deposition is telling:

> Q. But, in a scientific sense, you never did any work to try to establish that it's more likely than not that exposure to mold caused or aggravated their asthmatic or allergic conditions?
>
> A. That's correct.

Depo. at 51. Dr. Gutierrez is unable to identify any scientific study or testing, his own or otherwise, that demonstrates, more likely than not, that the type of mold found in the Plaintiffs' home caused them any health effects. Dr. Gutierrez did not, for example, conduct an allergy test on Plaintiffs. Nor did he base his testimony on the results of any testing done to determine whether Plaintiffs are allergic to any specific type of mold found in their home. Dr. Gutierrez simply testifies that Plaintiffs generally have allergies. Depo. at 14.

Dr. Gutierrez testifies that Plaintiff Yolanda Flores had allergies and asthma, and that he treated her for these problems. He also claims that mold causes allergic reactions in some individuals. However, Dr. Gutierrez fails to provide any evidence that a particular mold in the house had a greater possibility than cigarettes, dust mites, fibers, huisache, mesquite, or any other number of present environmental allergens, of causing health effects in Mrs. Flores or any other Plaintiff. Depo. at 14–16, 18–19, 30–31. After identifying these multitude of other allergens present in the area, Dr. Gutierrez fails to explain why molds present in the house are more likely than these to cause health problems in Plaintiffs. Depo. at 14. In addition to stating that it is "probably not" possible to determine the cause of allergy or asthma symptoms as a clinician,[10] Dr. Gutierrez muses that family practice doctors do not necessarily need to identify the exact cause of the allergy symptoms. Depo. at 49–51. According to Dr. Gutierrez, family practice doctors are most concerned about alleviating a patient's symptoms rather than finding the precise cause. Depo. at 51. This testimony fails the "rate of error" inquiry of *Daubert*. For this reason alone, testimony by Dr. Gutierrez that mold from the Flores house caused health problems in Plaintiffs should be excluded.

Dr. Gutierrez's failure to account for other factors that may have caused Plaintiffs' health problems renders his opinion uncertain and unreliable because it prevents the fact-finder from determining the extent to which household mold—rath-

---

**9.** Plaintiffs propose that they be allowed to supply a hypothetical question to their expert that assumes that Plaintiffs have been tested and found allergic to molds which have also been found in their home. Based on these assumptions, Plaintiffs argue that their expert should be able to opine, based on reasonable medical probability, that these molds caused allergies in the family. Setting aside the issues of whether such testing and its conclusions are scientifically sound, the hypothetical question is not admissible as it makes no accounting for dosage. In this Circuit, in cases involving exposures to chemical or biological agents, it is necessary under *Daubert* to show that the claimant received an exposure sufficient to cause a response. *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 277 (5th Cir. 1998); *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 423–24 (5th Cir.1987); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249 (5th Cir.2002); *see also*, *Wright v. Willamette Industries, Inc.*, 91 F.3d 1105, 1106–07 (8th Cir.1996), and *Abuan v. General Electric Co.*, 3 F.3d 329, 332–34 (9th Cir.1993). Without more, this hypothetical would be inadmissible.

**10.** Depo. of Dr. Gutierrez at 24–25. But *see contra*. herein at 8.

er than other elements—caused Plaintiff's alleged injuries. This is particularly troubling here where the record reflects that Mrs. Flores has suffered from allergies to various antigens, including an allergy to ragweed, for decades. An expert's failure to consider, or control for, other explanatory variables is fatal to the reliability of his testimony. *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir.2000).

### 3. Whether the expert's theory has been subjected to peer review and publication.

The third factor under *Daubert* is whether the proposed expert's scientific theory has been subjected to peer review. Dr. Gutierrez has not conducted any study of allergies to molds nor does he base his hypothesis that household molds cause allergies to any study or peer-reviewed publication:

Q. So what I'm asking you is whether or not you've seen any work that establishes that most asthmatics will have reaction to mold.

A. A study?

Q. Right.

A. No. I do, but, no. A study that tells me that most—I would think they would, because asthmatics react to any type of minute particles, like spores and—

Q. And dust?

A. —dust mites and—oh, sure, sure. But asthmatics, again, can react to may, many things in the environment that trigger—that will irritate that asthmatic factor, and that's pretty simple, obvious.

Q. But as far as scientific literature that's been tested, you're not aware of any scientific literature or study that's

been done that shows that an asthmatic person is most likely going to react to mold?

A. If I have, Counsel, I can't tell you when or where, no.

Depo. at 43.

As the Fifth Circuit said in *Moore*, *Daubert* requires a district judge considering admission of scientific evidence to determine whether the evidence is "genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir.1998)(citing *Rosen v. Ciba–Geigy Corp.*, 78 F.3d 316 (7th Cir.1996)). Although Dr. Gutierrez is an experienced family medical doctor, his analysis is admittedly unscientific speculation. Depo. at 51. Dr. Gutierrez has no hypothesis which has been tested either by himself or any other scientist to which he has directed the Court. His proffered expert testimony fails the "peer review" inquiry of *Daubert*.

### 4. Whether the expert's theory has been generally accepted within the relevant scientific community.

No evidence was presented as to the acceptance of Plaintiffs' theory in the scientific community.[11] With regard to Dr. Gutierrez's methodology, he, himself, concedes that his analysis was certainly less than exhaustive. *Depo.* at 25. Dr. Gutierrez candidly offers that physicians more specialized than he do more in determining the cause of a particular allergy like symptom in a patient than he has done:

A. In my practice, Counsel, I don't need to do that. Now, allergy doctors, maybe they go into a little bit more

11. Dr. Gutierrez was unable to identify any literature supportive of Plaintiffs' theory that household molds caused them adverse health effects. Depo. at 25. Defendant does identify a report contrary to Plaintiffs' position. Report of Council on Scientific Affairs, *Black Mold and Human Illness*, O. Edwin McClusky, M.D., Chair, CSA Report 1–I–02, dated September 2002.

detail, and perhaps they would do counts and cultures and whatever you do in that field. That's kind of nerdy, but I don't like that. And so, yes, in my case, you're right. In my scenario here in the office, I don't need to do all that. I just want to make them better.

Depo. at 50. However, Dr. Gutierrez made no effort to undertake this more rigorous analysis. Given the paucity of information offered by Plaintiffs on the acceptance of their theory combined with Dr. Gutierrez's concession, the Court can only conclude that they have failed to meet their burden to show that the Plaintiffs' theory is generally accepted in the scientific community.

## Conclusion

For the reasons stated herein, the Court finds that the proposed testimony of Dr. Gutierrez is not reliable and, therefore, not relevant. Unreliable testimony does not make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without such testimony. Because Dr. Gutierrez's proposed testimony is not relevant, it is not admissible. Accordingly, the Court hereby EXCLUDES any testimony from Dr. Gutierrez on the health effects of household mold on the Plaintiffs or on humans generally.