George BATES, Appellant,

v.

**ALLIED MUTUAL INSURANCE COMPANY, Appellee,**

and

**Darwin Van Baale, Defendant,**

and

**Gene R. La Suer, Appellee.**

No. 89–1805.

Supreme Court of Iowa.

March 20, 1991.

Roger J. Kuhle, Des Moines, for appellant.

Jack Hilmes and Thomas G. Fisher, Jr. of Duncan, Jones, Riley & Finley, P.C., Des Moines, for appellee Allied Mutual Ins. Co.

L.R. ‹ Voigts of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, Des Moines, for appellee Gene R. La Suer.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

Appellant, George Bates, appeals from an adverse ruling in the district court on motions for summary judgment filed by appellees Allied Mutual Insurance Company (Allied) and Gene R. La Suer. The district court granted appellees' motions holding (1) that plaintiff, as a third-party claimant, does not have a cause of action against an insurer, or its attorney, based on bad faith; (2) that Iowa Code section 507B (1985) does not create a private cause of action; (3) that defendants did not perpetrate a fraud upon the plaintiff; and (4) that plaintiff did not sustain severe emotional distress as a result of defendants' conduct. We conclude that the district court decided all issues correctly, and therefore affirm the district court's ruling granting defendants' motions for summary judgment.

I. *Background Facts and Proceedings.*

The circumstances of this case begin with a motor vehicle accident involving Bates and Darwin Van Baale that occurred on September 8, 1984. The accident took place at the intersection of Army Post Road and Southeast Fifth Street in Des Moines, Iowa. Bates was traveling South on Southeast Fifth when he collided with an automobile operated by Van Baale. Bates was taken to Iowa Lutheran Hospital following the accident. Van Baale was apparently uninjured and his passenger, David Hedlund, sustained minor injuries but refused treatment. Van Baale and Hedlund claimed that Van Baale had the green light, while Bates had the red. Bates was at first unsure of the color of his light, but later claimed he had the green.

Following an interrogation of the two drivers, a police officer issued Bates a summons for failure to stop at a traffic signal. Bates pled not guilty to the charge and the matter was later tried before a jury. At trial, Bates and Van Baale testified, but not Hedlund. Bates was acquitted on the charges.

Bates later filed a personal injury suit against Van Baale for damages arising out of the accident. Allied, Van Baale's insurance carrier, hired Gene R. La Suer to defend Van Baale in the suit. Throughout discovery, Van Baale and Hedlund continued to claim that Van Baale had the green light and was not liable. Defense counsel believed the case was defensible and that a defense verdict was likely. He thought that two witnesses, Van Baale and Hedlund, would testify the light for Van Baale was green, and a police officer would testify that when he talked with Bates in the

hospital he acknowledged that his light "may have been red." He also knew that Bates' insurance company had paid the property damage claim of Van Baale and the personal injury claim of Hedlund.

A bench trial on Bates' suit began on the morning of May 26, 1987. During the morning session, the parties commenced with a brief dispute relating to discovery and then gave opening statements to the court. Following opening statements, the court took the testimony of Bates and two other witnesses. During the noon recess, La Suer telephoned Hedlund in California to discuss the testimony to be given at trial upon his return. At that point, Hedlund revealed for the first time he had lied about the accident, and that Van Baale was the one who had run the red light on the night of September 8, 1984.

Immediately after speaking with Hedlund, La Suer telephoned Chris Angier, an adjuster for Allied, and informed him of the change in testimony. Angier then gave La Suer authority to spend up to the policy limits of $20,000 to settle the case. La Suer then confronted Van Baale with Hedlund's change in testimony, at which time Van Baale admitted that he ran through the red light.

After a brief contemplation of his options, La Suer negotiated with Bates' counsel, Steve Lombardi, and ultimately agreed to settle the suit for $15,000 plus $1500 in court costs. This was an amount below the policy limits, which, consequently, would prevent Bates from collecting on his own underinsurance policy. La Suer did not tell Bates or his attorney about the change in Hedlund's testimony. The settlement was then dictated into the record by attorney Lombardi and the trial was adjourned.

By the next day La Suer had decided he should withdraw from the case. He telephoned Allied and attempted to telephone Van Baale to set up a meeting at which he would explain his withdrawal. Shortly thereafter, Bates' attorney, Lombardi, contacted La Suer and explained that he had found out about Van Baale and Hedlund's perjured testimony. The two attorneys then agreed to hold a hearing before the district court judge who presided over the case to allow La Suer to withdraw. A hearing was set for that afternoon, May 27, 1987.

The hearing was attended by La Suer, Lombardi and Bates. At the conclusion of the hearing the court approved the withdrawal of La Suer pending an appearance by another counsel and notice to Van Baale. Within two days of La Suer's withdrawal, Tom Henderson, as counsel retained by Allied for Van Baale, offered the full policy limits of $20,000 to Bates in settlement of the case. Eventually, a settlement was reached with Bates accepting the $20,000 from Allied and another amount from his own company based on an underinsurance clause.

Bates then filed the present suit against Allied, Van Baale and La Suer, alleging bad faith, unfair trade practices, fraud and intentional infliction of emotional distress. Allied and La Suer moved for summary judgment which was granted by the district court in a ruling filed November 15, 1989. Bates appeals from this ruling.

Our scope of review is determined by the nature of the trial proceedings. *See Medd v. Medd,* 291 N.W.2d 29, 31 (Iowa 1980). This action was filed and tried at law. Therefore, our review is for correction of errors at law. Iowa R.App.P. 4.

## II. *Summary Judgment.*

Iowa Rule of Civil Procedure 237 sets forth the standards to be applied by the trial court in deciding summary judgment motions. That rule states in pertinent part that:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

Iowa R.Civ.P. 237(c).

"The purpose of summary judgment is to enable a judgment to be obtained promptly and without the expense of a trial when

there is no genuine and material fact issue present." *Drainage Dist. No. 119 v. Incorporated City of Spencer,* 268 N.W.2d 493, 499 (Iowa 1978). The moving party must demonstrate both the absence of any such issue, and that he is entitled to judgment as a matter of law. *Suss v. Schammel,* 375 N.W.2d 252, 254 (Iowa 1985). The trial court is required to examine the entire record before it in a light most favorable to the nonmoving party. *Matherly v. Hanson,* 359 N.W.2d 450, 453 (Iowa 1984); *Frohwein v. Haesemeyer,* 264 N.W.2d 792, 795–96 (Iowa 1978); *Amco Ins. Co. v. Stammer,* 411 N.W.2d 709, 711 (Iowa App. 1987). "If, upon this examination, the court determines no such issue is present, and the movant is entitled to judgment as a matter of law, entry of summary judgment is proper." *Drainage Dist. No. 119,* 268 N.W.2d at 499–500 (citing *Lewis v. State,* 256 N.W.2d 181, 186 (Iowa 1977); *Daboll v. Hoden,* 222 N.W.2d 727, 731 (Iowa 1974); *Davis v. Comito,* 204 N.W.2d 607, 611–12 (Iowa 1973)).

### III. *Third–Party Bad Faith.*

■ Defendants argue that a third-party bad faith cause of action is not recognized in this state as between a third-party claimant and a tortfeasor's insurer, and therefore summary judgment was proper on this issue. They cite *Long v. McAllister,* 319 N.W.2d 256 (Iowa 1982). In *Long,* the plaintiff asked this court to recognize a cause of action that would permit a third party to recover against an insurer for the insurer's bad faith in failing to settle a liability claim against the insured. We refused to recognize such a cause of action. However, we distinguished the situation in *Long* from third-party excess judgment cases and first-party actions. In each of those situations the duty of good faith arises out of the insurance contract and runs from the insurer to the insured. In an excess judgment case, the issue is whether the insurer is guilty of bad faith toward the insured in failing to settle an injured party's claim within policy limits. *See, e.g., Kooyman v. Farm Bureau Ins. Co.,* 315 N.W.2d 30 (Iowa 1982). In a first-party action, the issue is whether the insur-

er is guilty of bad faith in failing to pay the insured's own claim. *See e.g., Dolan v. Aid Ins. Co.,* 431 N.W.2d 790 (Iowa 1988). The reasoning behind these decisions is that while an insurer has a fiduciary relationship with its insured, it has an adversarial relationship with a third-party claimant. *Long,* 319 N.W.2d at 262. Therefore, a tort victim, as a third-party claimant, cannot compel a tortfeasor's insurer to negotiate and settle a claim in good faith anymore than he could compel the tortfeasor to do so himself.

Plaintiff contends that our decision in *Dolan* compels a different result. He argues that *Dolan* is a logical extension of the remedy formulated in *Kooyman* where we recognized a cause of action for third-party bad faith in an excess judgment situation. However, plaintiff's support from these cases is tenuous. In *Kooyman,* the plaintiff, representing the injured party, received from the tortfeasor, as part of a settlement, an assignment of the tortfeasor's claim for bad faith against its own insurance company. Plaintiff then sued the tortfeasor's insurer in an "excess judgment" action alleging bad faith. *Dolan,* like *Kooyman,* is based on a relationship between the insurer and the insured. It does not involve parties to an adversarial relationship as in *Long* and the present case. Because *Long* is applicable to the factual situation here, we agree with the district court in rejecting plaintiff's cause of action for bad faith as a matter of law.

■ Plaintiff makes an additional claim that the rejection of his third-party bad faith cause of action against defendants violates the equal protection clauses of the United States and Iowa constitutions. Plaintiff bases his equal protection claim on the different treatment given to the insured under an insurance contract and a third party to the contract. The law currently provides that an insured may sue an insurer for bad faith while a third party may not. *See Dolan,* 431 N.W.2d at 790; *Long,* 319 N.W.2d at 256; *Kooyman,* 315 N.W.2d at 30.

We agree with the district court in rejecting this claim. Again, the distinction be-

tween an insured and a third-party claimant is that the insured has a contractual relationship with the insurer. The insurer has a greater duty to the insured than to third parties. There is a legitimate and rational basis for distinguishing between these parties on the question of whether they can maintain a private cause of action in the event of an insurer's bad faith. Plaintiff's equal protection claim has no merit.

## IV. *Iowa Code Section 507B—Insurance Trade Practices.*

Plaintiff contends that this court should recognize a private cause of action based on Iowa Code chapter 507B. Defendants object to this contention on the ground that chapter 507B does not provide for such a cause of action. Plaintiff, however, argues that a private cause of action is authorized under the case law of this state and by Iowa Code section 668.9 (1985).

> The statutory provision at issue provides: The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:
>
> . . . .
>
> 9. *Unfair claim settlement practices.* Committing or performing with such frequency as to indicate a general business practice any of the following:
>
> . . . .
>
> *f.* Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

Iowa Code § 507B.4(9)(f).

In determining whether a private cause of action is cognizable under chapter 507B, this court has employed a four part test as modified from the United States Supreme Court case of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Pursuant to that test, we held in *Seeman v. Liberty Mutual Insurance Company,* 322 N.W.2d 35, 40 (Iowa 1982), that four considerations should be analyzed in determining whether a statute creates a private cause of action. Those considerations are: first, whether the plaintiff is a member of a class for whose special benefit the statute was enacted; second, whether there is legislative intent, either explicit or implicit, to create or deny a remedy; third, whether a private cause of action is consistent with the underlying purpose of the chapter; and fourth, whether the implication of a private cause of action will intrude into an area over which the federal government has exclusive jurisdiction or which has been delegated exclusively to a state administrative agency. *Id.* at 41–43. In *Seeman,* we specifically concluded that the legislative intent indicated that no private cause of action was intended by chapter 507B. *Id.*

We based our conclusion in *Seeman* on several factors. First, we concluded that section 507B.1 provided that the purpose of the statute was regulatory and was to be used to regulate trade practices in the business of insurance. *Id.* at 42. Second, the act explicitly vested the insurance commissioner with administrative powers, further indicating that the statute was regulatory in nature. *Id.* Third, section 507B.8 provides that the chapter in no way relieves or absolves a person from liability under other laws of the state, once again indicating that the chapter is essentially regulatory and not grounds for a private cause of action. Finally, we found that "the legislature, in enacting chapter 507B, intended only to invest the insurance commissioner with administrative enforcement powers and that the chapter not be expanded in the exercise of administrative or judicial discretion." *Id.*

Plaintiff does not contend that the present case is distinguishable from *Seeman.* Rather, he contends that through our other decisions in the area, and section 668.9, the law has changed since *Seeman* was handed down. More specifically, plaintiff contends that the rationale of *Dolan,* the growing majority of states finding first-party bad faith, and the willingness of several courts and legislatures to examine this field seem to compel a recognition of common law third-party actions for breach of the duty of fair dealing and the tort of bad faith. We disagree. A careful review

of the host of cases cited by plaintiff, as well as chapter 668, reveal no indication that chapter 507B creates a private cause of action as suggested by plaintiff. The fact that Iowa has adopted comparative fault and has prohibited insurance companies from improperly applying it does not create a private cause of action. In fact, our analysis in *Seeman* is very explicit in indicating that the intention of chapter 507B is not to create a private cause of action. Therefore, in refusing to adopt such a common law tort, we have specifically rejected the analysis advanced by plaintiff. To hold that chapter 507B creates a private cause of action would be in direct contradiction to existing Iowa law and would create a cause of action not intended by the legislature.

## V. *Fraud.*

Plaintiff further contends that he has established a claim for fraud against defendants. He claims that defendants made fraudulent misrepresentations to induce settlement and ratified Van Baale's fraudulent acts. We affirm the district court in its determination that these claims are legally and factually without merit as a matter of law.

■ In order to establish fraud in Iowa, it is essential to prove seven elements by a preponderance of clear, satisfactory and convincing evidence: (1) a material (2) false (3) representation coupled with (4) scienter and (5) an intent to deceive, which the other party (6) relies upon with (7) resulting damages to the relying party. *Sinnard v. Roach,* 414 N.W.2d 100, 105 (Iowa 1987) (citing *Hall v. Wright,* 261 Iowa 758, 766, 156 N.W.2d 661, 666 (1968)); *Beeck v. Kapalis,* 302 N.W.2d 90, 94 (Iowa 1981).

■ Ordinarily, a successful plaintiff in a fraud action may only recover the benefit-of-the-bargain plus consequential damages. *Cornell v. Wunschel,* 408 N.W.2d 369, 380 (Iowa 1987). The purpose of this rule is to put the defrauded party in the same financial position they would have been in had the fraudulent misrepresentations been true. *Id.* However, if application of the benefit-of-the-bargain rule fails

to make the plaintiff whole, out-of-pocket expenses become the measure of damages. *Id.; Robinson v. Perpetual Serv. Corp.,* 412 N.W.2d 562, 567 (Iowa 1987).

■ Based on the uncontroverted facts in the present case, there can be no claim for benefit-of-the-bargain or consequential damages because the original settlement was rescinded. *Cf. Test v. Heaberlin,* 118 N.W.2d 73, 75, 254 Iowa 521, 524–25 (1962). The maximum amount of recovery that plaintiff could have received from Allied on behalf of Van Baale was the policy limits of $20,000. Plaintiff received this amount. Any fraud claimed by virtue of the proffered settlement at less than policy limits was circumscribed by its immediate rescission, thus eliminating any claim plaintiff may have had for benefit-of-the-bargain and consequential damages. The only damages plaintiff could conceivably claim would be out-of-pocket damages. Damages for emotional distress are not available in a cause of action for fraud. *Cornell,* 408 N.W.2d at 382. Notwithstanding plaintiff's contended distress, fraud is an economic tort which only protects pecuniary losses. *Walsh v. Ingersoll–Rand Co.,* 656 F.2d 367, 370 (8th Cir.1981) (citing Restatement (Second) of Torts § 549 (1977)).

■ Under the out-of-pocket rule, a defrauded party is to be compensated for the amount the party lost through dealing with the defrauding party when it is apparent that no dealing would have occurred if the facts had been disclosed. *Cornell,* 408 N.W.2d at 381. This rule simply does not apply to the present case. Plaintiff was made whole by the actions of the defendants shortly after the alleged fraud. Plaintiff received all that he would have received from defendants even if the alleged fraud had not occurred. Plaintiff's only legal claim is for a relatively small transcript fee.

Even if we were to find the out-of-pocket rule proper in this case, plaintiff has not shown any damage to which it should be applied. In the present case, the transcript costs occurred after the relevant facts were disclosed. It was not a cost involved

in dealing with the defrauding party. Based on these facts, the cost is not recoverable under the out-of-pocket rule.

## VI. *Intentional Infliction of Emotional Distress.*

The fourth issue is whether summary judgment was properly awarded defendants on plaintiff's claim for intentional infliction of emotional distress. The elements of this tort are:

(1) Outrageous conduct by the defendant;

(2) The defendant's intentional causing, or reckless disregard of the probability of causing emotional distress;

(3) Plaintiff suffering severe or extreme emotional distress; and

(4) Actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

*Harsha v. State Sav. Bank,* 346 N.W.2d 791, 800 (Iowa 1984) (quoting *Powell v. Khodari–Intergreen Co.,* 334 N.W.2d 127, 129 (Iowa 1983)). Defendants claim that each of these elements are wanting as a matter of law. We agree with the district court in finding that the record is void of any evidence indicating plaintiff has suffered severe or extreme emotional distress.

In *Harsha,* plaintiff could not prove the elements of emotional distress, even though he could show that he was bothered by creditors at night, made enemies out of friends by trying to collect on accounts before they were due, was degraded by having to go into bankruptcy, and was "down-hearted more or less," and "depressed." *Harsha,* 346 N.W.2d at 801. In another case, plaintiffs could not prove emotional distress even though they were angry and lost sleep; Harry "quivered" when the subject came up, and Elouise worried whether people thought she owned a "junk farm." *Bethards v. Shivvers, Inc.,* 355 N.W.2d 39, 44–45 (Iowa 1984). The evidence in these two cases is very similar to the allegations of harm as argued by counsel in the present case.

[T]he plaintiff was so angry as to feel physical pain; he went sleepless that night and could only think of the deposition he gave to Mr. La Suer and La Suer's telling him that all George had to do was tell the truth; this was all consuming; since May 27, 1987, when the matter was verified by having a court reporter take a telephone statement from David Hedlund, Mr. Bates has continued to feel "that he was cheated by the legal system and does not trust lawyers or anyone else;" "he is haunted with the feeling that he could have died in the auto collision and would have gone to his grave as a marked man." These are his feelings; they occupy his waking moments, interrupt his sleep and prevent him from enjoying life. The physical injuries are healed and his underinsurance claim settled. The anxiety that remains is that of being vulnerable and helpless.

Even if accepted as true, plaintiff's feelings, without more, fall short of the necessary showing to establish a claim for intentional infliction of emotional distress. We agree with the district court in finding that this claim is controlled by our decisions in *Harsha* and *Bethards.* The district court properly rejected this claim as a matter of law. We affirm the district court's granting of defendant's motions for summary judgment.

AFFIRMED.