IBP, INC., Plaintiff,

v.

**FDL FOODS, INC., and Robert H. Wahlert, Defendants,**

City of Dubuque, Intervenor.

No. C 96–1005.

United States District Court, N.D. Iowa, Eastern Division.

Sept. 15, 1998.

Mark McCormick, Des Moines, IA, for Plaintiff.

Les Reddick, Dubuque, IA, for Defendants.

## ORDER

MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MELLOY, Chief Judge.

### I. Introduction

This matter comes before the Court on a resisted defense motion for summary judgment. The circumstances giving rise to this dispute began in the fall of 1995 and continued into early 1996. The Defendant, FDL Foods, Inc. ("FDL"), closed its Dubuque, Iowa hog slaughtering operations in August of 1995. Soon after FDL discontinued operations in Dubuque, FDL entered into negotiations with the Plaintiff, IBP, Inc. ("IBP"), for the sale of the company.

Although this Court covered the facts of this case in its April 1, 1996, Order following trial on one of IBP's claims, it is useful to reiterate that background information. Prior to its negotiations with IBP, FDL was engaged in discussions with Farmland Foods, Inc. ("Farmland") regarding Farmland's potential purchase of FDL. Negotiations terminated when Farmland's board of directors declined to approve the proposed transaction. Subsequently, IBP offered to purchase FDL for $15 million. The substance of IBP's offer was confirmed in a Letter of Intent dated September 26, 1995, prepared by IBP and accepted by FDL.

The following month, on November 15, 1995, FDL and IBP executed a written document known as the "Conditional Agreement" which extended the closing date until December 22, 1995, and conditioned closing on the execution of certain conditions. On December 12, 1995, IBP executed an Agreement and Plan of Merger (the "Merger Agreement") which stated that IBP would purchase FDL for $15 million. The Merger Agreement provided, *inter alia*, that IBP could terminate the deal if it had not reached a satisfactory "Custom Manufacturing Agreement" ("CMA") with Hormel Foods, Inc. ("Hormel") by the closing date, December 22, 1995. The Merger Agreement was

submitted to FDL shareholders and unanimously approved on December 22, 1995. Also on December 22, 1995, in a written agreement, the parties extended the closing date to January 8, 1996. On January 8, 1996, the parties again extended the closing date to March 31, 1996.

On January 24, 1996, Robert Peterson, Chairman and Chief Executive Officer of IBP, called Robert Wahlert, Chairman and Chief Executive Officer of FDL, and informed him that IBP and Hormel were unable to reach a satisfactory agreement on the CMA.[1] Peterson and Wahlert discussed a reduction in the acquisition price of FDL from $15 million to $9.9 million.

During the next 48 hours, FDL communicated with Hormel, Smithfield Foods, and Farmland. FDL inquired whether any of the three companies would be interested in acquiring FDL under more favorable terms than the IBP proposal of January 24, 1996. During the two-day period, Wahlert contacted several individual FDL shareholders to inform them of IBP's proposal and to ascertain whether the shareholders would support a merger with IBP pursuant to the proposal's terms.

Wahlert and Peterson again discussed possible terms for the merger with IBP on January 26, 1996. Following that discussion, Wahlert directed FDL's attorneys to prepare a draft of a new proposed merger agreement. FDL's attorneys called the draft the Restated and Amended Agreement and Plan of Merger (the "Draft Merger Agreement"). The Draft Merger Agreement listed IBP's purchase price of FDL at $9.9 million. FDL's counsel faxed the Draft Merger Agreement to IBP on January 29, 1996.

On February 4, 1996, Farmland made a new proposal to acquire FDL. FDL accepted Farmland's offer on February 5, 1996. That same day, FDL advised IBP that FDL's Board of Directors voted not to accept IBPs' offer to acquire FDL for $9.9 million. After

IBP received notice of FDL's decision to reject IBP's $9.9 million offer, IBP learned about the deal between FDL and Farmland.

IBP filed suit on February 14, 1996, requesting this Court enjoin FDL from selling its operations to any company but IBP, and seeking specific performance of the sale of FDL to IBP. In the alternative, IBP sought compensatory damages. (Complaint, Doc. 1.) Four days later, IBP filed an Amended and Substituted Complaint adding claims for breach of the implied covenant of good faith and fair dealing, breach of contract, and fraud. (Doc. 8.) IBP also requested punitive damages, characterizing FDL's conduct as willful and wanton. *Id.*

The City of Dubuque moved to intervene on February 15, 1996. (Doc. 4.). The Court granted the City of Dubuque's permissive intervention on March 11, 1996. (Doc. 19.) FDL counterclaimed against IBP on March 15, 1996, for intentional interference with a prospective business advantage and abuse of process. (Doc. 25.) The City of Dubuque amended its Complaint of Intervention to allege similar counterclaims. (Doc. 27.)

On March 25 and 26, 1996, this Court held a bench trial on IBP's claims for specific performance and injunctive relief.[2] After consideration of the evidence presented by the parties at trial, the Court denied IBP's request for injunctive relief and specific performance. (*IBP, Inc. v. FDL Foods, Inc.,* C96–1005 (N.D.Iowa April 1, 1996) (Doc. 43.)) The Court declined to rule on the remaining claims, but the Court noted that its findings would "likely resolve a number of the damage claims that remain for trial." *Id.* at 41.

Shortly before trial, counsel for IBP raised an additional issue. IBP asserted that during the FDL–IBP negotiations, Wahlert failed to disclose the existence of alleged environmental problems on FDL's Dubuque property. *Id.* at 39. The Court declined to rule on the environmental issue in the April 1, 1996, Order.

---

1. As the Court noted in its April 1, 1996, Order, Peterson taped the January 24, 1996, conversation with Wahlert. The Court admitted the tapes into evidence during the March 25–26, 1996, trial, and consequently, the facts of the conversation are not in dispute.

2. The Court expedited trial on the specific performance claim and request for injunctive relief so that the sale of FDL's Dubuque facility could be completed in a timely manner.

On April 3, 1996, two days after the Order was filed, IBP filed a Second Amended and Substituted Complaint that included the following claims: Count I (specific performance), Count II (breach of the implied covenant of good faith and fair dealing), and Count III (fraud). (Doc. 45.) The Second Amended and Substituted Complaint also added Robert Wahlert as a defendant in his personal capacity. *Id.*

IBP moved for summary judgment on FDL's and the City of Dubuque's counterclaims. The Court granted IBP's motion for summary judgment and dismissed both FDL's counterclaims (tortious interference with a prospective business advantage and abuse of process) and the City of Dubuque's counterclaims (same). (*IBP, Inc. v. FDL Foods, Inc.,* C96–1005 (N.D.Iowa August 13, 1996) (Doc. 67.))

Finally, on November 27, 1996, IBP filed an Amendment to the Second Amended and Substituted Complaint it had filed on April 3, 1996. (Doc. 71.) The amendment included additional fraud allegations (Count III) and an additional breach of express warranty claim (Count IV). The Second Amended and Substituted Complaint, as amended, is the subject of this Order.

On December 3, 1996, Wahlert filed a motion for summary judgment on IBP's fraud claim (Count III). Later, FDL joined Wahlert's motion. On January 7, 1997, FDL moved for summary judgment on Count II (breach of the implied covenant of good faith and fair dealing) and Count IV (breach of warranty). IBP has resisted both Wahlert's motion and FDL's motion.

This Court heard oral arguments from all parties on September 22, 1997, on all pending motions. The following day, this Court entered an order dismissing Intervenor, the City of Dubuque, from the litigation. (Doc. 114.) On June 22, 1998, this Court entered an order dismissing Wahlert from the litigation and dismissing Count III (fraud) of the Second Amended and Substituted Complaint against Wahlert pursuant to a stipulation by IBP and Wahlert. (Doc. 116.) This stipulation did not affect the fraud claims against FDL.

The Court now turns to FDL's motion for summary judgment on Count II (breach of the implied covenant of good faith and fair dealing), Count III (fraud), and Count IV (breach of warranty).

## II. Analysis

Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Berryhill v. Schriro,* 137 F.3d 1073, 1075 (8th Cir.1998) (citing Fed.R.Civ.P. 56(c)). "[S]ummary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir. 1990) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Procedurally, the moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying the portions of the record which show a lack of a genuine issue. *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (quoting *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548). When the movant has carried its burden under Rule 56(c), "its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

When a motion for summary judgment is made and properly supported, the nonmoving party may not rely on bare allegations but must set forth specific facts showing that there is a genuine issue for trial. *LeBus v. Northwestern Mutual Life Ins.,* 55 F.3d 1374, 1376 (8th Cir.1995). The nonmoving party must go beyond the pleadings and employ depositions, affidavits, answers to interrogatories, and admissions on file to marshal specific facts that show a genuine issue for trial exists. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. If the record as a whole could not lead a rational trier of fact to find for the nonmoving party, no genuine issue for trial exists, and the district court should grant the

summary judgment motion. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348.

### A. IBP's Fraud Claim Against FDL

IBP has leveled two distinct fraud claims against FDL. First, IBP alleges that Wahlert misrepresented to Peterson the environmental condition at FDL's Dubuque facility. Second, IBP asserts that FDL failed to negotiate exclusively with IBP after the January 26, 1996, conversation between Wahlert and Peterson. IBP maintains that these negotiations transpired in contravention of the "no shop clause" found in the earlier Merger Agreement and any subsequent oral agreement.[3]

#### 1. The Environmental Condition at FDL's Dubuque Facility

 IBP alleges that Wahlert failed to disclose alleged environmental problems on FDL's property and that Wahlert's failure to disclose those problems constituted fraudulent nondisclosure and fraudulent misrepresentation. (Pla.'s Brief in Resis. to Def.'s Mot. for Summ. J., Doc. 81, at 5.) IBP lists each element of both theories of recovery in its resistance to FDL's motion for summary judgment.[4] However, a protracted discussion of each element is unnecessary to the ultimate resolution of IBP's fraud claims.

 Fraudulent nondisclosure and fraudulent misrepresentation both require the party alleging fraud, IBP in this case, to prove that it relied upon the defendant's alleged fraudulent acts or statements. *Cornell v. Wunschel,* 408 N.W.2d 369, 374 (Iowa 1987) (fraudulent nondisclosure); *Bates v. Allied Mutual Ins.,* 467 N.W.2d 255, 259 (Iowa 1991) (fraudulent misrepresentation). Iowa has adopted the rule in the Restatement (Second) of Torts § 537: "The recipient of a fraudulent misrepresentation can recover against its maker for pecuniary loss ... only if ... he relies on the misrepresentation in acting or refraining from action ..."

*Bradshaw v. Wakonda Club,* 476 N.W.2d 743, 747 (Iowa Ct.App.1991).

 In order to successfully maintain a claim for fraudulent nondisclosure, IBP must prove that it acted in reliance upon Wahlert's failure to disclose the environmental problems at the FDL plant. *See* Iowa Civil Jury Instruction 810.2. In order to successfully maintain a claim for fraudulent misrepresentation, IBP must prove that it acted in reliance on the truth of Wahlert's representation regarding the environmental condition of the Dubuque facility. *See* Iowa Civil Jury Instruction 810.1 (1987). Essentially, under both theories of recovery, IBP must prove that it changed its position in reliance on Wahlert's statements, and this change in position caused IBP harm. *See Seibert v. Noble,* 499 N.W.2d 3, 7 (Iowa 1993) ("There was no reliance by Seibert resulting in damage to him. The trial court correctly concluded there was no substantial evidence in the record to submit the issue of fraud.").

 Additionally, Iowa law requires that IBP prove fraud by clear, satisfactory, and convincing evidence. *Bates,* 467 N.W.2d at 260; Iowa Civil Jury Instructions 810.1, 810.2. While the general presumption in Iowa is that in civil cases the burden of proof is a preponderance of the evidence, an exception to this rule has long been recognized in the area of civil fraud. *State ex rel. Goettsch v. Diacide Distributors, Inc.,* 561 N.W.2d 369, 372 (Iowa 1997). The clear, satisfactory, and convincing evidence burden is higher than the typical preponderance of the evidence and less than the beyond a reasonable doubt standard. *Id.* The burden of proof in fraud cases is qualitatively, rather than quantitatively, distinguishable from a mere preponderance of the evidence. *Id.*

Peterson stated that he first learned about environmental problems at FDL through a

---

3. IBP has termed this second fraud claim a "subsidiary fraud contention." (Plaintiff's Brief in Resistance to Defendant's Motion for Summary Judgment, Doc. 81, at 8.)

4. The elements of fraudulent nondisclosure are set out in Iowa Civil Jury Instruction 810.2 (1987). The elements of fraud based on express

misrepresentation are: (1) a material misrepresentation; (2) made knowingly; (3) with intent to induce to plaintiff to act or refrain from acting; (4) upon which the plaintiff justifiably relies; and (5) damages. *Air Host Cedar Rapids v. Airport Comm'n,* 464 N.W.2d 450, 453 (Iowa 1990).

news report[5] in the Dubuque Telegraph Herald on February 13, 1996. (Pla.'s Resp. to Sta. of Mat'l Facts by FDL, Doc. 97, at 11.); (Pla.'s Mot. in Limine, March 25, 1996, Doc. 34.) Nonetheless, it is undisputed that IBP renewed its efforts to purchase FDL after Peterson learned of the article. IBP filed suit on February 14, 1996, requesting the Court to enjoin FDL from selling its operations to other corporate suitors and to grant specific performance of the Merger Agreement. The Court denied IBP's requests following the two-day trial in March 1996.

The Court finds it difficult to reconcile the conflicting positions IBP has taken in this litigation. First, IBP claims that it relied to its detriment on misleading statements by Wahlert regarding environmental conditions in the fall and winter of 1995 during its contract negotiations with FDL. Yet, when IBP acquired information about environmental problems at FDL's plant,[6] IBP still pushed forward with their lawsuit for specific performance of the Merger Agreement and acquisition of FDL. With this inconsistency in mind, it is plain that IBP cannot prove that it relied on Wahlert's statements to its detriment. IBP was fully apprised about the environmental conditions of the FDL plant, yet it maintained its suit for specific perfor-

mance of the sale and enforcement of the Merger Agreement.[7]

Reliance, an essential element of fraud, is absent in this case. Since IBP has failed to adequately support its claim that it relied on Wahlert's alleged misrepresentations or non-disclosure, IBP has failed to generate any genuine issues for trial, and FDL is entitled to summary judgment in its favor on the environmental fraud claims. *See Northwest Airlines, Inc. v. Astraea Aviation Services, Inc.,* 111 F.3d 1386, 1393 (8th Cir.1997) ("[The plaintiff] had the burden to show each element of the fraud claim. Since it did not, the district court did not err in granting summary judgment.").

### 2. *FDL's Negotiations with Other Companies*

IBP also alleges that FDL fraudulently "misrepresented [its] intention to complete the merger with IBP." (Pla.'s Brief in Resis. to Wahlert's Mot. for Summ. J., Doc. 81, at 8.). However, as this Court noted in its April 1, 1996, Order, the Court's conclusion that the Merger Agreement of December 12, 1995, was terminated on January 24, 1996, aids the resolution of the remaining claims.[8] (Order, April 1, 1996, Doc. 43, at 40–41.)

---

**5.** The Dubuque Telegraph Herald quoted the Dubuque City Manager as stating that the city would take on some "environmental exposure" by acquiring a portion of land owned by FDL to facilitate a sale of the plant. Kathy Bergstrom, *Farmland Dealing on FDL,* Dubuque Telegraph Herald, Feb. 12, 1996, at A1.

**6.** In addition to the article in the Dubuque newspaper, IBP filed a detailed motion in limine which listed other sources of environmental information. On March 21, 1996, IBP obtained a copy of a report prepared by Farmland ("Farmland Report"). The Farmland Report detailed "the presence of heavy metals above regulatory action levels in soil and groundwater on and near FDL property." (Pla.'s Mot. In Limine, Doc. 34, at 3.)

**7.** As a collateral matter, the parties have devoted a substantial portion of their briefs to the appropriate measure of damages. Since IBP rescinded the Merger Agreement, the "out-of-pocket" measure of damages would be appropriate in this case for any finding of liability. *Bates,* 467 N.W.2d at 260. However, beyond IBP's inability in proving reliance, "out-of-pocket" damages are only appropriate "when it is apparent that no

dealing would have occurred if the facts had been disclosed." *Id.* Since IBP pressed forward with its efforts to complete the merger after it learned of the environmental problems at the plant, IBP is not entitled to "out-of-pocket" damages.

**8.** IBP asserts that the interlocutory nature of the Court's April 1, 1996, Order precludes FDL's reliance on the findings of fact in the decision. (Pla.'s Res. To Def.'s Sta. of Mat'l Facts, Doc. 82, at 4.) However, this Court laid out its findings of fact and conclusions of law in the detailed Order resolving the specific performance claim following the trial in March, 1996. Findings of fact from the specific performance trial described in the April 1, 1996, Order provide support for FDL position and are appropriate to bolster its motion for summary judgment. *Ayers v. City of Richmond,* 895 F.2d 1267, 1270–72 (9th Cir.1990); *St. Louis Baptist Temple v. F.D.I.C.,* 605 F.2d 1169, 1171–72 (10th Cir.1979); 11 Moore's Federal Practice, § 56.11[1][b].

Moreover, the Court expressly certified the Order for immediate appeal under 28 U.S.C. 1292(b). (Order, April 1, 1996, Doc. 43, at 40.)

Since no valid written contract existed between IBP and FDL after January 24, 1996 (Order, April 1, 1996, Doc. 43, at 40.), IBP cannot rely on an enforceable written contract to support its fraud claims. In the absence of a valid written contract,[9] IBP has resorted to a claim that Wahlert made fraudulent oral misrepresentations to Peterson on January 26, 1996. (Doc. 81, at 8.)

IBP alleges that on January 26, 1996, Wahlert misrepresented that FDL was not interested in dealing with other corporate buyers, and intended to sell FDL only to IBP. (Pla.'s Brief in Resis. to Def.'s Mot. for Summ. J., Doc. 81, at 8–9.) IBP maintains that while Wahlert told Peterson he was dealing only with IBP, Wahlert actually intended to sell the company to Hormel, Smithfield Foods, or Farmland. IBP states: "The best evidence supporting this contention is that this [the sale of FDL to Farmland] is what happened." *Id.* at 8.

In Iowa, a statement of intent to perform a future act is actionable fraud if, when the statement is made, the speaker had an existing intent not to perform. *Robinson v. Perpetual Services Corp.*, 412 N.W.2d 562, 565 (Iowa 1987). However, in establishing the present intent not to perform, the mere fact that the parties did not complete the agreement does not prove the promissor did not intend to keep the promise. *Id.* Additionally, as in the other types of fraud, the plaintiff must prove promissory fraud by a preponderance of clear, satisfactory, and convincing evidence. *Irons v. Community State Bank*, 461 N.W.2d 849, 854 (Iowa Ct.App. 1990).

The only proof IBP offers that Wahlert lacked the intent to complete the IBP–FDL merger, is the mere fact that the IBP–FDL deal "fell through." (Pla.'s Brief in Resis. to Def.'s Mot. for Summ. J., Doc. 81, at 8.) On

the other hand, FDL points to persuasive evidence that Wahlert had a present intent to complete the merger during the January 26, 1996, conversation with Peterson.

First, Wahlert directed FDL's attorneys to prepare a draft of a new proposed merger agreement. FDL's attorneys designated the new proposed merger agreement the Restated and Amended Agreement and Plan of Merger ("Draft Merger Agreement"). The parties further stipulated that counsel for FDL faxed the Draft Merger Agreement to IBP on January 29, 1996. This type of conduct conflicts with IBP's allegations that Wahlert had no intention during the January 26, 1996 conversation with Peterson to proceed with the merger.

Additionally, following the January 26, 1996, conversation between Wahlert and Peterson, Wahlert actively discouraged the efforts by the Iowa Economic Development Office and the City of Dubuque to convince Farmland to reconsider its decision not to acquire FDL. Wahlert stated in an affidavit that since Hormel, Smithfield Foods, and Farmland expressed little interest in purchasing FDL on January 24 and 25, 1996, Wahlert planned to proceed with the IBP–FDL deal. Only after IBP failed to respond to the Draft Merger Agreement that FDL faxed to IBP on January 29, 1996, did Wahlert and FDL pursue and complete the transaction with Farmland. Wahlert's actions discouraging these efforts of third parties are inconsistent with IBP's allegations that Wahlert fraudulently misrepresented his intentions to merge with IBP.

In response to the compelling proof FDL has presented with its motion, IBP has presented only bare allegations that Wahlert did not intend to proceed with the IBP–FDL merger on January 26, 1996. *See LeBus*, 55

Thus, the Court removed all jurisdictional impediments to appeal by the parties. *See Restaura, Inc. v. St. Louis Concessions, Inc.*, 52 F.3d 189, 190 (8th Cir.1995). The Plaintiffs did not appeal the April 1, 1996, Order, and the Court of Appeals has not directed this Court that the findings of fact were clearly erroneous. *Airlines Reporting Corp. v. Barry*, 825 F.2d 1220, 1227 (8th Cir.1987). The Court has not been presented with a persuasive reason to disregard its previous findings of fact.

9. IBP continues to assert that the Merger Agreement was valid and enforceable following the January 24, 1996 conversation between Peterson and Wahlert. (Amendment to Second Amended Complaint, Doc. 71, at 3.) As this Court has stated previously, IBP terminated the Merger Agreement, and in subsequent negotiations, the parties failed to form a new and valid contract. (Order, Doc. 43, at 40.)

F.3d at 1376 (stating that the nonmoving party may not rely on bare allegations to withstand a properly supported motion for summary judgment). IBP has failed to set forth specific facts showing that a genuine issue for trial exists on its fraud claim. *See Astraea Aviation,* 111 F.3d at 1393. Accordingly, FDL's motion for summary judgment is granted on IBP's fraud claims relating to Wahlert's intent to merge with FDL.

### B. Breach of Contract Claims

IBP has also asserted claims against FDL for breach of the implied covenant of good faith and fair dealing (Count II) and breach of express warranty (Count IV). (Second Amended and Substituted Complaint, Doc. 45, at 8; Amendment to Second Amended and Substituted Complaint, Doc. 71, at 4.)

■■■■ Iowa has not recognized breach of the implied covenant of good faith and fair dealing outside the context of a contractual relationship between parties. *See Fogel v. Trustees of Iowa College,* 446 N.W.2d 451 (Iowa 1989) ("The majority of jurisdictions that have addressed the covenant have unequivocally rejected it.... We need not decide in this case whether to join the limited number of jurisdictions that have recognized the doctrine."). Since the Court has previously determined that IBP terminated and rescinded the December 12, 1995, Merger Agreement and that no new enforceable oral contract was created, IBP cannot effectively assert a breach of the implied covenant of good faith and fair dealing. (Order, April 1, 1996, Doc. 43, at 40.) When a contract is rescinded and terminated, contractual obligations are discharged, and neither party has any rights or duties under the contract. *Recker v. Gustafson,* 279 N.W.2d 744, 755 (Iowa 1979).

■■■■ Similarly, IBP maintains that FDL "breached its express warranty in the December [12,] 1995, Merger Agreement that it was in material compliance with environmental law...." (Amendment to Second Amended and Substituted Complaint, Doc. 71, at 4.) In Iowa, the theory of express warranty can apply to specific representations or warranties contained in contracts for the sale of real estate. *Flom v. Stahly,* 569

N.W.2d 135, 140 (Iowa 1997). Nonetheless, this Court found that IBP rescinded and terminated the December 12, 1995, Merger Agreement—the contract which IBP now looks to as the basis of its express warranty claim.

Since IBP terminated and rescinded the December 12, 1995, Merger Agreement, IBP cannot successfully claim that FDL breached an express warranty in the Merger Agreement. *Sithon Maritime Co. v. Holiday Mansion,* 983 F.Supp. 977, 986 (D.Kan.1997) (stating that the plaintiff's express warranty claim fails because the parties to the litigation did not execute a valid written or oral contract). Therefore, IBP's breach of express warranty claim fails to generate any material issues for trial and FDL's motion for summary judgment on the express warranty claim is granted.

### III. Conclusion

After a full review of the record, this Court has determined that IBP has failed to generate any genuine issues for trial on its fraud claims and contract claims. Since IBP did not rely on FDL's alleged misrepresentations or nondisclosure about the environmental conditions at FDL's plant, IBP cannot prove the necessary elements of fraud by a preponderance of clear, satisfactory, and convincing evidence. IBP has also failed to present specific facts that Wahlert did not intend to proceed with the merger of FDL and IBP on January 26, 1996.

Additionally, since IBP terminated and rescinded the December 12, 1995, Merger Agreement and the parties failed to subsequently create a new enforceable oral agreement, IBP's contract claims are also deficient. In the absence of a valid contract, this Court is compelled to grant FDL's motion for summary judgment on the contract claims. Accordingly, IBP's request for an award of punitive damages is also denied. This Order resolves all remaining claims in FDL's favor, and therefore, the complaint is dismissed.

### ORDER

Upon consideration of the FDL's motion for summary judgment, IBP's opposition to

the FDL's motion, and of the entire record of this case,

It is ORDERED that FDL's motion for summary judgment is GRANTED with respect to Count II (breach of the implied covenant of good faith and fair dealing), Count III (fraud), and Count IV (breach of express warranty).